UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:21-cv-61493-RUIZ/STRAUSS

RYAN TURIZO,
individually and on behalf of all
others similarly situated,                    CLASS ACTION

      Plaintiff,                          JURY TRIAL DEMANDED

v.                                            REQUEST FOR HEARING

DOCTOR'S ASSOCIATES, LLC,

      Defendant.
_____/

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Ryan Turizo files his Response in Opposition to Defendant Subway Franchisee Advertising Fund Trust Ltd.'s Motion to Dismiss Second Amended Class Action Complaint ("Motion" or "Mot."), [DE 24], and states:

## ARGUMENT

**A. Defendant Sent Text Message Solicitations to Plaintiff's Residential Telephone in Violation of the TCPA's Do-Not-Call Provisions.**

To succeed on his claims under the TCPA (Count I), Plaintiff must allege that he is a "residential telephone subscriber". *See* 47 C.F.R. § 64.1200(c). The TCPA does not define the term "residential telephone subscriber". In 2003, the FCC extended the protections afforded by the statute by ruling "that cellular numbers that were placed on the DNC registry were presumed to be residential." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. at 14039). In its 2003 Order, the FCC expressly rejected interpreting "residential subscribers" narrowly to categorically exclude cellular telephone numbers – as Defendant asks this Court to hold. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. at 14038 (rejecting the proposed definition of "residential subscribers" to mean "telephone service used primarily for communications in the subscriber's residence" as "far too restrictive and inconsistent with the intent" of the TCPA). The FCC's 2003 Order was subsequently codified at 64.1200(e), which confirms that the statute's do-not-call related provisions "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'" 47 C.F.R. § 64.1200(e).

1

Consistent with the FCC's 2003 Order and section 64.1200(e), almost all courts have concluded that cellular telephones can be used for residential purposes and calls to cellular telephone numbers are subject to the TCPA's do-not-call prohibitions. *See, e.g., LaGuardia v. Designer Brands Inc.*, No. 2:20-cv-2311, 2021 U.S. Dist. LEXIS 170704, at *22 (S.D. Ohio Sep. 9, 2021) ("The act 'directs the FCC to promulgate regulations to protect residential telephone subscribers' privacy rights.' *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 U.S. Dist. LEXIS 127596, at *22 (S.D. Cal. July 8, 2021) (citing 47 U.S.C. § 227(c)(1)-(2)). *See also* 47 C.F.R. § 64.1200(c)(2). 'Residential subscriber' includes cell phone users. 47 C.F.R. 64.1200(e) (citing *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 59-64, 2003 FCC LEXIS 3673, *60-64, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003) ('2003 Rule')). *See also Hand v. Beach Entm't Kc*, 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) (holding same). Correspondingly, cell phone users in the Registry are considered residential subscribers. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 64, 2003 FCC LEXIS 3673, *64, 29 Comm. Reg. (P & F) 830 (F.C.C. June 26, 2003)."); *Klassen v. Protect My Car Admin Servs.*, No. 8:21-cv-761-MSS-TGW, 2021 U.S. Dist. LEXIS 160058, at *4 (M.D. Fla. Aug. 23, 2021) (noting that DNC provision "'also applies' to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.'") (quoting *Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 U.S. Dist. LEXIS 14310, 2020 WL 474647, at *6 (M.D. Fla. Jan. 29, 2020) (quoting 47 C.F.R. § 64.1200(e)); *McDermet v. DirecTV, LLC*, Civil Action No. 19-11322-FDS, 2021 U.S. Dist. LEXIS 11123, at *16 (D. Mass. Jan. 21, 2021) ("The FCC's implementing regulations make it unlawful, among other things, to 'initiate any telephone solicitation to' a 'residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry.'…. "That

includes cell phone owners who 'may participate in the national do-not-call list.'" (citations omitted).

The holding of the majority line of cases is consistent with the general rule that the TCPA, as a remedial statute that was passed to protect consumers from unwanted automated telephone calls, is to be construed broadly to benefit consumers. *See Gager v. Dell Fin. Servs.*, LLC, 727 F.3d 265, 271 (3d Cir. 2013). Accordingly, "[i]f proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer." *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017). To the extent this Court has any questions regarding the application of the statute to cover unsolicited calls to cellular telephones, this Court should tip the scales in favor of Plaintiff and the Class members.

For its purported blanket exception of cellular telephones from the statute's protection, Defendant relies on a minority line of cases that involved the same *pro se* plaintiff and/or failed to discuss or even acknowledge the FCC's 2003 Order or section 64.1200(e). *See* Mot. at n.3. Thus, those cases are of limited value to the question before this Court given their incomplete analysis on the issue. And Defendant's contention that the 2003 Rule should not be afforded any deference because it believes that "the statutory text is dispositive", Mot. at 7, incorrectly presumes that the statute is not ambiguous, which it is given the fact that it does not define the term "residential telephone subscriber". One court recently addressed this very argument, holding that the "FCC's interpretation of § 227(c)'s ambiguous term 'residential telephone subscriber' (or at times 'residential subscriber') is not unreasonable, and the Court defers to it under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), 104 S. Ct. 2778, 81 L. Ed. 2d 694." *Cunningham v. Technologic United States*, No. 19-CV-00231-F, 2020 U.S. Dist. LEXIS

257373, at *15 (D. Wyo. June 17, 2020). This Court should therefore defer to the FCC's interpretation of the statute.

Next, Defendant contends that the FCC exceeded the scope of its authority by concluding that wireless numbers are residential numbers under the statute. Mot. at 5-6. Defendant is again mistaken. Pursuant to section 227(c)(1), Congress authorized the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). As discussed at length, the statute does not define or limit the term "residential telephone". Accordingly, the FCC was well within its grant of authority to enact rules and regulations that advance the mandate of protecting consumer privacy rights. The FCC correctly concluded that "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones[,]" and that, therefore, wireless numbers should be protected as residential telephones under the statute. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003).

Moreover, Defendant contends that the FCC exceeded its authority granted by Congress when enacting section 64.1200(e) and therefore the regulation "is not binding on this court." Mot. at 7. But only the Eleventh Circuit has jurisdiction to determine the validity of FCC regulations. *See US West Communs., Inc. v. Hamilton*, 224 F.3d 1049, 1054 (9th Cir. 2000); *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396-97 (9th Cir. 1996); *Lennartson v. Papa Murphy's Holdings, Inc.*, 2016 U.S. Dist. LEXIS 725, at *11 (W.D. Wash. Jan. 5, 2016). And the fact that Defendant has challenged the regulation as a defense does not allow it to evade this exclusive jurisdiction. *See United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 463 (8th Cir. 2000).

Accordingly, while this Court may consider the application of the regulation to this case, the validity of 47 C.F.R. § 64.1200(e) can only be addressed by the Eleventh Circuit.

Having demonstrated that Defendant's position with respect to cellular telephones is flawed, the remaining issue for this Court to decide is whether Plaintiff has sufficiently alleged that his cellular telephone number is his residential line. In addressing the sufficiency of such allegations at the motion to dismiss stage, courts have held that allegations regarding the registration of a cellular telephone number on the National Do Not Call registry combined with a claim that the number is the plaintiff's residential line are sufficient to plead that the Plaintiff is a residential telephone subscriber. *See Rosenberg*, 435 F. Supp. 3d at 324 ("Rosenberg submits that he placed his cellular phone number on the National Do Not Call registry and that he uses his cell phone as his residential line. Those allegations are adequate for the purposes of pleading."); *Laccinole v. Appriss*, 453 F.Supp.3d 499, 505-06 (D.R.I. 2020) ("Laccinole alleges that Appriss called his cellular telephone, which uses a number registered with the national do-not-call list. Compl. ¶¶ 22, 45. This creates the presumption that he is a 'residential subscriber' for purposes of the TCPA's do-not-call protections.") (citing *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. at 14039).

Here, Plaintiff sufficiently alleges that he is a residential telephone subscriber. Specifically, Plaintiff alleges that the number that received Defendant's solicitations has been registered on the National Do not Call Registry since 2020. SAC at ¶16. Plaintiff further alleges that he is the subscriber of the telephone number that received Defendant's text messages, and that he has at all times relevant utilized the number "for personal purposes and the number is Plaintiff's residential telephone." *Id*. at ¶18. Nothing more is required of Plaintiff and Defendant's arguments to the contrary should be rejected.

**B. Despite its "Everything but the Kitchen Sink" Approach, Defendant Fails to Advance a Single Persuasive Argument Warranting Dismissal of Plaintiff's FTSA Claim.**

*1. The FTSA is not Preempted by the TCPA.*

"Field preemption exists 'where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *State Farm Bank FSB v. Reardon*, 539 F.3d 336, 342 (6th Cir. 2008). "In determining whether a federal statute preempts state laws, '[i]t has long been the case that our sole task is to determine the intent of Congress, and in so doing we have been mindful that Congress does not cavalierly pre-empt state-law causes of action.'" *Mass. Ass'n of Private Career Sch. v. Healey*, 159 F. Supp. 3d 173, 215 (D. Mass. 2016) ("*MAPCS*") (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 173 (1st Cir. 2009)). "The presumption [against preemption] . . . accounts for the historic presence of state law *but does not rely on the absence of federal regulation*." *MAPCS*, 159 F. Supp. 3d at 215 (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009)) (emphasis original). "Therefore, Congress's telemarketing regulations, including the TCPA, do not in themselves provide a basis for not applying the presumption against preemption." *MAPCS*, 159 F. Supp. 3d at 215.

And contrary to Defendant's arguments, "as most cases addressing preemption challenges to telemarketing laws have noted, telemarketing has historically been the subject of extensive state regulation, and the TCPA was intended to allow concurrent, non-exclusive federal regulation for interstate calls." *MAPCS*, 159 F. Supp. 3d at 215 (citing *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1045 (7th Cir. 2013) (applying the presumption against preemption in a challenge to Indiana's telemarketing law and noting that "in passing the TCPA, Congress particularly noted that over forty states had enacted" similar telemarketing laws); *Van Bergen v. Minnesota*, 59 F.3d 1541, 1548 (8th Cir. 1995) (noting that the Congressional findings and legislative history of the TCPA "suggest[ ] that the TCPA was intended not to supplant state law, but to provide interstitial

law preventing evasion of state law by calling across state lines"); *Sussman v. I.C. Sys., Inc.*, 928 F. Supp. 2d 784, 789 (S.D.N.Y. 2013) ("The Court finds that the intention of Congress in enacting the TCPA was not to preempt state laws, but rather to regulate the telecommunications industry concurrently with the states, which 'have had a long history of regulating telemarketing practices.'") (quoting *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and Order*, 18 F.C.C.R. 14014, 14060-62 (2003))); *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, 2013 U.S. Dist. LEXIS 164034, 2013 WL 6049024, at *1 (W.D. Wa. Nov. 15, 2013) (applying the presumption against preemption in a challenge to Washington's telemarketing law and noting that "only a clear and manifest purpose of Congress to preempt state law can overcome the presumption"); *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 342 (2d Cir. 2006) ("The legislative history indicates that Congress intended the TCPA to provide 'interstitial law preventing evasion of state law by calling across state lines.' Congress thus sought to put the TCPA on the same footing as state law, essentially supplementing state law where there were perceived jurisdictional gaps." (citation omitted)).

Defendant's contention that the presumption against preemption should not be applied is therefore flawed, and this Court should apply the presumption just as the Seventh Circuit did over eight years ago in *Patriotic Veterans, Inc*, in denying an identical challenge to a state telemarketing law. *See* 736 F.3d at 1054. In that case, like here, the defendant challenged an Indiana telemarketing law on various grounds, including field preemption. *Id*. at 1045. In reversing the lower court's holding that the state statute was preempted by the TCPA, the Seventh Circuit held in relevant part that "[t]he non-preemption clause of the TCPA is the first and best evidence that the federal government did not intend to occupy the entire field of robocall regulation." *Id*. at 1051 (citing 47 U.S.C. § 227(f)(1)(stating first and foremost, "State law not preempted"); *Van Bergen*

*v. Minnesota*, 59 F.3d 1541, 1548 (8th Cir. 1995)).  Moreover, the Seventh Circuit observed that the "TCPA also expressly contemplates that states will continue to regulate telemarketing." *Id.* (citing 47 U.S.C. § 227(c)(3)(J) (any federal "do-not-call" list must be designed to enable states to use the database to enforce state law); 47 U.S.C. § 227(f)(2) (If states create a do-not-call list, it must include any federal "do not call" list adopted pursuant to the TCPA). Lastly, the Seventh Circuit noted that "states have long regulated the content of abusive telephone calls, and interferences with the peaceful enjoyment of the home." *Id.* Accordingly, pursuant to the Seventh Circuit's analysis, as well as the majority of courts that have agreed, Defendant's field preemption arguments is without merit.

Next, Defendant contends that the TCPA's savings clause, by negative implication, only protects state telemarketing laws that restrict intrastate communications, and that the FTSA is preempted because it regulates intrastate and interstate communications. In *MAPCS*, the defendant made – and lost – the same argument in challenging a Massachusetts law that regulated certain for-profit recruiting activities, including solicitation calls. *See* 159 F. Supp. 3d at 182. Specifically, the defendant in *MAPCS* argued that *"*[t]he TCPA includes a saving[s] clause that explicitly excludes from preemption those state laws 'that impose[ ] more restrictive *intrastate* requirements or regulations' . . . [b]ut here, the [r]egulation[ ] would impose more restrictive *interstate* requirements, which the statute forbids." *Id.* at 215 (emphasis original).

In rejecting the argument, the court in *MAPCS* concluded

> that nothing in the savings clause, or any other provision of the TCPA, expressly preempts a state law such as § 31.06(9) that regulates interstate communications. Moreover, the fact that the TCPA expressly saves certain state laws does not suggest, by negative implication, that other state laws not specifically saved by subsection (f) are preempted by the federal law. Express preemption occurs when the language of the statute explicitly states that the federal law has a preemptive effect. But the TCPA does not say what state laws *are* preempted; it instead says certain state laws *are not* preempted.

8

*Id*. at 216 (emphasis original). The court went on to note "that every court, save for one, to address the same argument presented by MAPCS has rejected it for those reasons." *Id.* (citing *Patriotic Veterans, Inc.*, 736 F.3d at 1548; *Van Bergen*, 59 F.3d at 1548; *Sussman v. I.C. Sys., Inc.*, 928 F. Supp. 2d 784, 790 (S.D.N.Y. 2013); *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, 2013 U.S. Dist. LEXIS 164034, 2013 WL 6049024, at *1 (W.D. Wa. Nov. 15, 2013)); *see also Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2013 U.S. Dist. LEXIS 193320, at *6 (W.D. Wash. Dec. 17, 2013) ("This Court agrees and finds that the TCPA savings clause does not require a finding that the WADAD is preempted."); *United States v. Dish Network, LLC*, 667 F. Supp. 2d 952, 963-64 (C.D. Ill. 2009) ("the [savings clause] does not preempt state laws that . . . impose more restrictive intrastate requirements . . . or [ ] prohibit any . . . [interstate] conduct set forth in subclauses (A) through (D)"); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125 (W.D. Wash. 2012) ("Since CEMA is a prohibition on interstate telephone solicitations and prohibitions on interstate telephone solicitations are within the savings clause, CEMA is included within the TCPA's savings clause and is not preempted.");

In sum, "[t]he primary purpose of the TCPA was to ban automated or prerecorded telephone calls to a home . . . [and t]hrough the savings clause, Congress expressly excluded from preemption certain categories of state law that accomplish the same goal." *Meilleur v. AT&T Inc.*, No. C11-1025 MJP, 2011 U.S. Dist. LEXIS 132473 (W.D. Wash. Nov. 16, 2011) (quoting *Hovila v. Tween Brands, Inc.*, No. C09-0491RSL, 2010 U.S. Dist. LEXIS 34861, 2010 WL 1433417, at *8 (W.D. Wash. Apr. 7, 2010)). The FTSA is one such state law that seeks to accomplish the same goals as the TCPA and is not preempted. This Court should therefore reject Defendant's flawed preemption arguments.

## 2.  *The FTSA Does not Violate the Dormant Commerce Clause*.

In advancing its dormant Commerce Clause argument, Defendant ignores that "dormant Commerce Clause jurisprudence 'is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999, 1011 (C.D. Cal. 2014) (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008)). Thus, "not every exercise of local power is invalid merely because it affects in some way the flow of commerce between the states." *Ades*, 46 F. Supp. 3d at 1011 (citing *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (quoting *Great Atl. & Pac. Tea Co. v. Cottrell*, 424 U.S. 366, 371 (1976))). Indeed, where a law "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Ades*, 46 F. Supp. 3d at 1012 (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). "Moreover, legislation that may cause businesses to decide to conform nationwide conduct to meet the requirements of a given state does not necessarily constitute direct regulation of out-of-state commerce." *Ades*, 46 F. Supp. 3d at 1014. As the party challenging the FTSA, Defendant "bears the burden of proof in establishing the excessive burden in relation to the local benefits." *Ades*, 46 F. Supp. 3d at 1012 (quoting *Nat'l Ass'n of Optometrists & Opticians v. Brown*, 567 F.3d 521, 528 (9th Cir. 2009)).

In *Ades*, the court analyzed a dormant Commerce Clause challenge to California's Invasion of Privacy Act ("CIPA") similar to Defendant's attack on the FTSA.  46 F. Supp. 3d at 1002. That case involved the defendant's interception and recording of the plaintiff's and class members' communications. *Id*. In rejecting the defendant's arguments, the court in *Ades* first concluded that

10

application of CIPA would not "effect direct regulation of extraterritorial commerce, constituting a per se violation of the dormant Commerce Clause." *Id.* at 1012. For its holding, the court reasoned that CIPA does not "discriminate facially, purposefully, or practically against out-of-state commerce[,]" *id.*, but rather that the statute's impact on out-of-state commerce "are 'incidental' and do not constitute direct regulation meriting strict scrutiny under the dormant Commerce Clause[,]" *Id.* at 1015.

The court next rejected the defendant's extraterritoriality argument – the same argument raised by Defendant here – noting that the Supreme Court's holding in *Healy v. Beer Inst.* is "not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices." *Ades*, 46 F. Supp. 3d at 1013 (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 951 (9th Cir. 2013)) (citing *Healy*, 491 U.S. 324, 336 (1989) ("[S]pecifically, a state may not adopt legislation that has the practical effect of establishing a scale of prices for use in other states."); *see also Nat'l Pork Producers Council v. Ross*, No. 20-55631, 2021 U.S. App. LEXIS 22337 (9th Cir. July 28, 2021) ("And indeed, the Supreme Court…has indicated that the extraterritoriality principle in *Baldwin, Brown-Forman*, and *Healy* should be interpreted narrowly as applying only to state laws that are 'price control or price affirmation statutes,' *Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 669 (2003). We have adopted this interpretation and held that the extraterritoriality principle is 'not applicable to a statute that does not dictate the price of a product and does not tie the price of its in-state products to out-of-state prices.' *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris* (*Eleveurs*), 729 F.3d 937, 951 (9th Cir. 2013) (cleaned up). The Tenth Circuit has followed suit. *See Energy & Env't Legal Inst. v. Epel*, 793 F.3d 1169, 1172 (10th Cir. 2015) (Gorsuch, J.) (holding that the 'three essential characteristics' that mark *Baldwin, Brown-Forman*, and *Healy* are that the state

11

law at issue (1) was a price-control statute, (2) linked prices paid in-state with those paid out-of-state, or (3) discriminated against interstate commerce).").

The *Ades* court noted that CIPA does not dictate the price of a product and, therefore, the *Healy* extraterritoriality analysis is inapplicable. *Id*. The court in *Ades* additionally noted that CIPA

> regulates only calls with a nexus to California and has the purpose of preventing privacy harms to Californians, even if it might create incentives for Omni to alter its behavior nationwide. That Omni may find it more convenient to warn all callers that their calls may be recorded, rather than attempt to differentiate between callers from single-consent and dual-consent states, does not create a constitutional violation.

*Id*. at 1014-15. Lastly, the court in *Ades* rejected the same undue burden argument advanced by Defendant here, reasoning that the defendant had failed to meet "its burden at this stage of the litigation of proving that the burden of complying with [CIPA] is 'clearly excessive in relation to the putative local benefits.'" *Id*. at 1016 (quoting *Pike*, 397 U.S. at 142).

The holding and reasoning of *Ades* are directly on point. Like CIPA, the FTSA does not directly regulate commerce because it does not discriminate facially, purposefully, or practically against out-of-state commerce and, therefore, the statute does not represent a *per se* violation of the dormant Commerce Clause. Moreover, Defendant's extraterritoriality argument, based on a misreading of *Healy*, is unpersuasive because the FTSA does not dictate the price of anything. Lastly, like CIPA, the FTSA only regulates communications that have a nexus to Florida, and the only purpose of the statute is to protect the privacy rights of Florida residents. Defendant's attempts to misconstrue the plain wording of the statute – suggesting that the statute imposes liability for calls having no connection to Florida – by ignoring the various portions of the statute that make clear that the legislature only intended to regulate calls into or from Florida. *See* Fla. Stat. §§ 501.059(1)(e) ("'***Doing business in this state***' means businesses that conduct telephonic sales calls ***from a location in Florida*** or from other states or nations ***to consumers located in Florida***.");

(1)(i) ("'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, *doing business in this state*, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices."); (8)(d) ("There is *a rebuttable presumption* that a telephonic sales call made to any area code in this state *is made to a Florida resident or to a person in this state at the time of the call*.") (emphasis supplied).

Simply because Defendant may have to secure proper consent before robocalling consumers is not a basis to declare the FTSA unconstitutional. Moreover, Defendant cannot satisfy its burden to show that its compliance with the FTSA would be "clearly excessive" in relation to the benefit the statute provides to Florida residents. The best Defendant was able to come up with is that it would have to implement "different practices for calling Florida phone numbers". Mot. at 18. But that is an empty statement and all Defendant really needs to do is to secure the same type of consent as it is required under the TCPA. Defendant's challenge under the dormant Commerce Clause should therefore be rejected. And, as discussed below in the context of Defendant's First Amendment challenge, Florida certainly has a substantial interest in protecting its residents from robocalls, which is also applicable to this Court's dormant Commerce Clause analysis.

### 3. *The FTSA Does not Violate the First Amendment.*

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Over time, however, the Supreme Court "has rejected an absolutist interpretation of those words." *FEC v. Wis. Right To Life, Inc.*, 551 U.S. 449, 482 (2007). Accordingly, "certain types of speech receive either less protection or no protection under the First Amendment." *Otto v. City of Boca Raton*, 981 F.3d 854, 865 (11th Cir. 2020).

Commercial speech is one such type of speech that receives less protection and the Eleventh Circuit has recognized as much on no less than four occasion since the Supreme Court's decision in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). *See Otto*, 981 F.3d at 865 ("Lesser-protected categories include commercial speech, as well as incidental speech swept up in the regulation of professional conduct.") (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980) (commercial speech); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456-57 (1978) (incidental speech)); *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1235 (11th Cir. 2017) ("Challenges to restrictions on commercial speech are evaluated according to the rubric set forth by the Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission*. 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980)."); *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) ("The law is clear that commercial speech is afforded lesser protections than those traditionally given to noncommercial speech.") (citing *Board of Trustees v. Fox*, 492 U.S. 469, 477 (1989)); *Dana's R.R. Supply v. AG*, 807 F.3d 1235, 1246 (11th Cir. 2015) ("As is so often true, the general rule that content-based restrictions trigger strict scrutiny is not absolute. Content-based restrictions on certain categories of speech such as commercial and professional speech, though still protected under the First Amendment, are given more leeway because of the robustness of the speech and the greater need for regulatory flexibility in those areas.") (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) (commercial speech); *Wollschlaeger v. Governor of Florida*, 797 F.3d 859, 2015 WL 4530452 (11th Cir. 2015) (professional speech).

"Commercial speech is a narrow category of necessarily expressive communication that is related solely to the economic interests of the speaker and its audience, . . . . or that does no more than propose a commercial transaction." *Dana's R.R. Supply*, 807 F.3d at 1246 (quoting *Cent.*

*Hudson*, 447 U.S. at 561; *Va. Pharmacy Bds. v. Va. Citizens Consumer Council*, 425 U.S. 748, 762, 96 S. Ct. 1817, 48 L. Ed. 2d 346 (1976)). The Supreme Court has "been careful to distinguish commercial speech from speech at the First Amendment's core." *Fla. Bar v. Went for It*, 515 U.S. 618, 623 (1995). For this reason, "[c]ommercial speech" is provided with only "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values." *Id*. In other words, it "is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Id*. Consistent with Supreme Court precedent, the Eleventh Circuit has held that a restriction on commercial speech – irrespective of whether it is content-based – is subject to the more flexible, yet still searching, standard of intermediate scrutiny." *Dana's R.R. Supply*, 807 F.3d at 1246 (citing *Cent. Hudson Gas*, 447 U.S. at 564 (1980) (describing the test for commercial speech); *Wollschlaeger*, 797 F.3d 859 (applying the same test to professional speech)); *see also McDermott v. Langevin*, 587 B.R. 173, 186 (Bankr. N.D. Ga. 2018) ("Restrictions on commercial speech are evaluated under the four-part test announced by the United States Supreme Court in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Commission of New York*, 447 U.S. 557, 562-63 (1980)."); *Woods v. Santander Consumer USA Inc.*, No. 2:14-cv-02104-MHH, 2017 U.S. Dist. LEXIS 47256, at *4 (N.D. Ala. Mar. 30, 2017) ("Alongside these frameworks, the United States Supreme Court has articulated a separate standard for analyzing restrictions on commercial speech.") (citations omitted).

While in "two recent First Amendment cases, the Supreme Court [] said without qualification that *all* content-based laws are subject to strict scrutiny… Neither of the controlling opinions in these cases directly addressed exceptions to the general rule[,]" including the commercial speech exception. *GEFT Outdoor, L.L.C. v. Monroe Cty.*, No. 1:19-cv-01257-JRS-MPB, 2021 U.S. Dist. LEXIS 149964, at *17 (S.D. Ind. Aug. 10, 2021) (discussing *Reed*, 576 U.S.

at 163 and *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 207 L. Ed.

2d 784 (2020)).

The FTSA only restricts commercial speech. Notwithstanding, Defendant attempts to avoid

the inescapable application of intermediate scrutiny to the FTSA by contending that strict scrutiny

applies even to content-based restrictions on commercial speech. Mot. at 20. Defendant is mistaken

and if its interpretation of *Reed* and Supreme Court First Amendment jurisprudence were accepted

> the law governing categories of speech never thought to be subject to First
> Amendment protection would be upended. For instance, prohibitions of speech
> amounting to fraud are technically content-based and thus subject to strict scrutiny
> under the unqualified terms of *Reed*—we have to look at the content of the speech
> to determine that it is fraud.

*GEFT Outdoor, L.L.C.*, 2021 U.S. Dist. LEXIS 149964, at *18-19 (citing *Am. Ass'n of Pol.*

*Consultants*, 140 S. Ct. at 2361 (Breyer, J., concurring in part and dissenting in part) (positing that

categories of proscribable speech like obscenity, fraud, and speech integral to criminal conduct

would become content-based and subject to strict scrutiny if the *Reed* rule were strictly applied)).

Contrary to Defendant's position, *Reed* left intact the commercial-speech test first

articulated in *Central Hudson Gas* and later applied in *Fla. Bar v. Went for It*, 515 U.S. 618 (1995),

both of which establish that a regulation of purely commercial speech does not trigger strict

scrutiny. Indeed, courts throughout the country have "rejected" the precise "notion" advanced by

Defendant in this case—i.e., "that *Reed* altered *Central Hudson*'s longstanding intermediate

scrutiny framework." *Contest Promotions, LLC v. City & Cty. of S.F.*, 874 F.3d 597, 601 (9th Cir.

2017); *accord Reagan Nat'l Advertising of Austin, Inc. v. City of Austin*, 972 F.3d 696, 709 (5th

Cir. 2020); *Adams Outdoor Advert. Ltd. P'ship v. City of Madison*, 2020 U.S. Dist. LEXIS 60861,

at *36 (W.D. Wis. 2020); *Reagan Nat'l Advertising of Austin, Inc. v. City of Cedar Park*, 343 F.

Supp. 3d 674, 679 (W.D. Tex. 2018); *GEFT Outdoor LLC*, 187 F. Supp. 3d at 1016-17; *Peterson*

16

*v. Vill. Of Downers Grove*, 150 F. Supp. 3d 910, 928-29 (N.D. Ill. 2015), aff'd on other grounds sub nom. *Leibundguth Storage & Van Serv., Inc. v. Vill. Of Downers Grove*, 939 F.3d 859 (7th Cir. 2019); *Cal. Outdoor Equity Partners v. City of Corona*, 2015 U.S. Dist. LEXIS 89454, at *24-*25 (C.D. Cal. July 9, 2015).

In the face of this overwhelming authority, Defendant insists that the Supreme Court upended its long-standing precedent with respect to commercial speech in *Reed*. Mot. at 20. But the Supreme Court did not such thing as the case did not involve or even discuss commercial speech. Similarly, *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) offers Defendant little support for its position. In that case, the Supreme Court reiterated that "***the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech***." *Sorrell*, 564 U.S. at 567 (emphasis supplied).

In sum, the weight of authority, including three Eleventh Circuit cases, holds that intermediate scrutiny applies to the regulation of commercial speech. Under the *Central Hudson* test, a regulation on commercial speech such at the FTSA will survive if (1) "the government has a substantial interest in restricting the speech"; (2) "the regulation directly advances the asserted government interest"; and (3) "the regulation 'is not more extensive than is necessary to serve that interest[;]'" also known as the least restrictive means test. *FF Cosms. FL, Inc.*, 866 F.3d at 1298 (citing *Cent. Hudson Gas*, 447 U.S. at 566).

The Supreme Court has emphasized that "the differences between commercial speech and noncommercial speech are manifest." *Fla. Bar*, 515 U.S. at 632. As a result, the "least restrictive means test has no role in the commercial speech context." *Id*. What the Supreme Court requires, instead, "is a 'fit' between the legislature's ends and the means chosen to accomplish those ends." *Id*. This "fit" need not be "necessarily perfect, but reasonable"; it need not necessarily represent

"the single best disposition but one whose scope is in proportion to the interest served, that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." *Id*.

The FTSA satisfies intermediate scrutiny. In the context of similar challenges to the analogous TCPA, courts have consistently upheld restrictions regarding the type of technology and consent required to contact consumers. First, "residential privacy and tranquility have been recognized as significant governmental interests." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 793 (N.D.W. Va. 2017); *see also Ohralik*, 436 U.S. at 460 (the State has a "particularly strong" interest in "protecting consumers and regulating commercial transactions."). Contrary to Defendant's myopic reading of the legislative history, the Florida legislature made clear that it amended the FTSA to combat unwanted prerecorded and autodialed calls that had resulted in the FTC receiving 293,071 complaints from Florida consumers in 2020 alone. *See* Bill Analysis and Fiscal Impact Statement, dated Apr. 19, 2021, attached as **Exhibit A**, at 2. The Florida legislature further noted how the Supreme Court's recent decision limiting the TCPA's ATDS definition rendered a portion of that statute "obsolete". *Id*. at 3. Thus, the legislature stepped in and amended the FTSA to protect Florida consumers from the void that had been left in the federal statute by recent developments in the law. Moreover, the Supreme Court has noted that this prong of the *Central Hudson* test may simply be satisfied by "history, consensus, and 'simple common sense.'" *Went For It, Inc.*, 515 U.S. at 628 (quoting *Burson v. Freeman*, 504 U.S. 191, 211 (1992)). History, consensus, and common sense support the conclusion that regulation of unsolicited automated/prerecorded sales calls serves a significant government interest.  As observed by the Supreme Court, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls."  *Barr*, 140 S. Ct. at 2343.

18

Second, the FTSA directly advances the asserted governmental interest by limiting the use of automated and prerecorded technologies and is "designed to remedy the problems perceived" with the use of such technology. *See Mey*, 245 F. Supp. 3d at 793; *see also Went for It*, 515 U.S. at 626 ("the harms . . . are real" and the Act "will in fact alleviate them to a material degree."). In other words, there is a fit between the legislature's ends and the means chosen. *See Fla. Bar*, 515 U.S. at 632. While Defendant may believe the fit is not perfect because it precludes it from continuing to blast consumers with millions of unsolicited text messages, the legislature was not required to come up with the best solution to the problem, but rather a proportional one. *See id*. And the legislature has done just that, by attempting to strike a balance between clearly unsolicited sales calls and those that consumers might wish to receive. *See* Bill Analysis and Fiscal Impact Statement (noting that some calls are "legitimate…For example, a doctor's office may legally use a robocall to remind one of an upcoming appointment.").

Moreover, the FTSA leaves companies like Defendant with various options should they wish to engage consumers with commercial speech. Indeed, just like the TCPA, "although the use of ATDS technology is limited, the live operator and prior consent options allow the continued use of ATDS technology while protecting the interests of the recipient." *Id*. Further, the FTSA "does not 'foreclose an entire medium of expression[.]'….Rather, it prohibits a single method of communication: autodialed, prerecorded calls to people who have not consented to receive those calls. The restriction is therefore narrowly tailored." *Id*. (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994)).

Lastly, the FTSA "leaves open alternative channels for communication. [Defendant] has ample other means with which to deliver its message, including live telephone calls, consented to robocalls and mailings. [Defendant] is not entitled to its first or best choice or even one that

19

provides the same audience." *Mey*, 245 F. Supp. 3d at 793 (internal citations omitted); *see also Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014), aff'd, 136 s. Ct. 663 (2016) (stating, "the protection of privacy is a significant interest, the restriction of automated calling is narrowly tailored to further that interest, and the law allows for many alternative channels of communication."); *Moser v. F.C.C*,, 46 F.3d 970, 975 (9th Cir. 1995) (Observing that the TCPA leaves "open many alternative channels of communication, including the use of taped messages . . ., as well as all live solicitation calls" and the fact "[t]hat some companies prefer the cost and efficiency of automated telemarketing does not prevent Congress from restricting the practice."); *Woods v. Santander Consumer USA Inc.*, No. 2:14-cv-02104-MHH, 2017 U.S. Dist. LEXIS 47256, at *14 (N.D. Ala. Mar. 30, 2017) (Finding that under intermediate scrutiny, the pre-2015 amendment TCPA is "narrowly tailored to advance a significant government interest and leaves open ample alternative channels of communication," and therefore, does not violate the First Amendment.).

### 4. *The FTSA is not Unconstitutionally Vague*.

"[T]he Supreme Court 'has "expressed greater tolerance of enactments with civil rather than criminal penalties…."'" *Harrell v. Fla. Bar*, 915 F. Supp. 2d 1285, 1294 (M.D. Fla. 2011) (quoting *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1310 (11th Cir. 2009)) (quoting *Hoffman Estates*, 455 U.S. at 498-99). "Indeed, a civil statute is unconstitutionally vague only if it is so indefinite as 'really to be no rule or standard at all.'" *Id*. (quoting *Seniors Civil Liberties Ass'n, Inc. v. Kemp*, 965 F.2d 1030, 1036 (11th Cir. 1992)). Because the FTSA is a civil statute permissibly regulating only commercial speech, a less stringent vagueness test applies to Defendant's challenge. *See j2 Glob. Communs., Inc. v. Protus IP Sols.*, No. CV 06-00566 DDP (AJWx), 2008 U.S. Dist. LEXIS 126245, at *35 (C.D. Cal. Jan. 14, 2008) (holding that the

analogous TCPA "permissibly regulates commercial speech and does not apply to non-commercial speech" and "as a civil enactment, is subject to a less strict vagueness test.").

In the Eleventh Circuit, "[t]he general rule is that for a facial challenge to a legislative enactment to succeed, 'the challenger must establish *that no set of circumstances* exists under which the Act would be valid." *Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001); *see also Ala. Educ. Ass'n v. State Superintendent of Educ.*, 746 F.3d 1135, 1139 (11th Cir. 2014) ("To succeed in their void for vagueness challenge, the Act's challenger's 'must demonstrate that the law is impermissibly vague in all of its applications.'"). The Eleventh Circuit has made clear that this is a "'*heavy burden*,'" which "makes such an attack '*the most difficult challenge* to mount successfully' against an enactment." *Horton*, 272 F.3d at 1329.

Critically, where an enactment clearly covers the conduct at issue, a party does not have standing to bring a facial challenge. *Ala. Educ.*, 746 F.3d at 1139-40 ("Where an enactment clearly covers some conduct in which a plaintiff engages, that plaintiff cannot complain of the vagueness of the law."); *United States v. Single Family Residence & Real Prop.*, 803 F.2d 625, 630 (11th Cir. 1986) (challenger "must establish that [the law] was vague as applied to it in order to have standing to make a facial challenge to the statute."); *see also Hoffman Estates*, 455 U.S. at 497, ("A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) (remarking that the rule that one engaged in conduct clearly proscribed by a statute may not challenge the statute for vagueness "*makes no exception for conduct in the form of speech*") (emphasis supplied). Indeed, "[t]ime and again, the Supreme Court has emphasized '[t]he traditional rule . . . that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not

before the Court.""" *Set Enters.*, 2010 U.S. Dist. LEXIS 154575, at *48-49 (citing *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38  (1999)) (quoting *Ferber*, 458 U.S. at 767) (citing *Broadrick*, 413 U.S. at 610).

Under these applicable standards, Defendant cannot meet its "heavy burden" to bring a successful facial challenge to the FTSA. First, although Defendant complains that the FTSA does not define the automatic dialing technology at issue, "[a] statute is not unconstitutionally vague…simply because it does not define every word." *Green v. Anthony Clark Int'l Ins. Brokers, Ltd.*, No. 09 C 1541, 2010 U.S. Dist. LEXIS 8744, at *13 (N.D. Ill. Feb. 1, 2010). "A law is impermissibly vague if it does not 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly' or does not provide sufficiently explicit standards for those who will apply it, thereby encouraging 'arbitrary and discriminatory enforcement.'" *United States v. Single Family Residence & Real Prop.*, 803 F.2d 625, 630 (11th Cir. 1986).

"The challenged statute need not be precise[,] [a]ll that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding." *Consumer Fin. Prot. Bureau v. Frederick J. Hanna & Assocs., P.C.*, 114 F. Supp. 3d 1342, 1368 (N.D. Ga. 2015) (quoting *Leib*, 558 F.3d at 1310); *see also Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1239 (W.D. Mo. 2019) ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.") (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)).

Here, the phrase "automated system for the selection or dialing of telephone numbers" does not require a subjective interpretation but, rather, is objective and clearly puts persons of ordinary intelligence on notice of what is prohibited and, thus, is not unconstitutionally vague. *See Green*,

2010 U.S. Dist. LEXIS 8744, at *15-16 (holding the term "unsolicited advertisement" in the analogous TCPA was not vague because it "does not use language that requires a subjective interpretation" but "language [that] is objective and clearly puts persons of ordinary intelligence on notice of what is prohibited").

Indeed, courts have rejected similar vagueness challenges to the analogous TCPA, which uses similar language as the FTSA to describe the auto dialing technology the statutes cover. *See id.*; *Smith*, 414 F. Supp. 3d at 1239 ("The ATDS definition is not unconstitutionally vague. The statute uses common words that give a person of ordinary intelligence a reasonable opportunity to know the types of dialing systems the TCPA prohibits…. That Congress may, 'without difficulty, have chosen clearer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague.'").

As the court in *Smith* found, here, "[a] caller of ordinary intelligence is on notice that if they use [an automated system for the selection or dialing of telephone numbers], they may come within the scope of the statute's prohibition." *Smith*, 414 F. Supp. 3d 1205, 1239. Thus, the FTSA's application to "an automated system for the selection or dialing of telephone numbers" is not unconstitutionally vague.

Second, Plaintiff alleges (and this Court must accept as true at this stage) that to make the unlawful calls at issue, Defendant utilized a computer software system that falls within the statute's definition. SAC at ¶¶21-30. The software system Defendant allegedly used clearly falls within the scope of the statute and, thus, Defendant does not have standing to bring a facial attack based on hypothetical scenarios not at issue. *See Smith*, 414 F. Supp. 3d at 1240 ("'[T]he systems described in the Complaint dial numbers from a stored list—precisely what is prohibited by statute…. Accepting Plaintiffs' factual allegations as true as the Court must at this stage, the ATDS definition

23

is not unconstitutionally vague as applied to the system alleged here."); *Wilson*, 2019 U.S. Dist. LEXIS 166732, 2019 WL 4735483, at *8 (rejecting an identical vagueness challenge to the ATDS definition because "[t]he statute prohibits calls made by software with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. Plaintiffs allege that Txt Live! is such a device in the complaint. Accordingly, the TCPA's definition of an ATDS is not unconstitutionally vague."). Indeed, as the Eleventh Circuit has made clear, if the challenger's "own conduct is clearly proscribed by the terms of the ordinance, this 'necessarily precludes a finding of facial vagueness.'" *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1271 (11th Cir. 2011).

Third, because Defendant's conduct plainly falls within the scope of the statute, Defendant cannot meet its "***heavy burden***" to establish ***that no set of circumstances*** exists under which the FTSA would be valid. Defendant argues that the FTSA is vague because it could hypothetically apply to calls from a smartphone. Mot. at 23. Putting aside the fact that the FTSA applies only to "***sales calls***" without the requisite consent (so all personal cell phone calls are safe), the Supreme Court has made clear that "[t]he fact that a legislative act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. . . ." *Horton*, 272 F.3d at 1329; *see also Hoffman Estates*, 455 U.S. at 497, 102 S. Ct. at 1191 ("A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."). Defendant cannot meet its burden to establish ***that no set of circumstances*** exists under which the FTSA would be valid by providing hypothetical examples (unpersuasive ones at that) where the statute might operate unconstitutionally.

### 5. *The Canon of Constitutional Avoidance has no Application Here*.

Preliminarily, the canon of constitutional avoidance has no application here because the constitutionality challenges raised by Defendant are meritless for the reasons discussed above. Additionally, the canon of constitutional avoidance must not be applied unless this Court finds that the FTSA is "susceptible to more than one construction" after engaging in "ordinary textual analysis." *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019). And the purpose of the canon is to give "effect to congressional intent, not of subvert[] it[]" as Defendant requests. *See* Clark v. Martinez, 543 U.S. 371, 382 (2005).

First, the FTSA's autodialer provision is not susceptible to more than one construction. The statute prohibits utilizing "an automated system for the selection or dialing of telephone numbers or the playing of a recorded message[,]" without the express written consent of the called party. Fla. Stat. § 501.059(8)(a). According to Defendant, this definition could be interpreted in multiple ways, including applying to calls from smartphones, because the words "system" and "automated" are not defined. As discussed above, every word of a statute need not be defined and to the extent Defendant remains confused, the plain meaning of the word "automated" shows that the statute does not apply to all smartphone calls, just those where the telephone numbers are selected or dialed automatically by any type of system. *See Scheu & Scheu, Inc. v. Scheu,* No. 15-10147-CIV, 2017 U.S. Dist. LEXIS 96405, at *18 (S.D. Fla. June 22, 2017) ("The actual definitions of the adjective 'automated' are 'operated automatically,' 'an automated process,' 'automated equipment/machinery,' and 'a fully/highly automated factory.'" (quoting *Automated*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/automated (last visited June 20, 2017)).

Lastly, the application of the cannon as requested by Defendant would work to subvert legislative intent. As noted in the statute's legislative history, the Florida legislature amended the

FTSA to account for the Supreme Court's limitation of the TCPA. *See* **Exhibit A** at 3. Defendant's request for this Court to limit the FTSA is precisely the opposite of what the legislature intended and should therefore be rejected.

 **WHEREFORE**, Plaintiff respectfully requests an order denying Defendant's Motion to Dismiss, and for such other relief as this Court deems just and equitable under the circumstances.

<u>**REQUEST FOR HEARING**</u>

 Plaintiff respectfully submits that given the issues of first impression raised by Defendant in its Motion this Court would benefit from oral argument on the Motion. Plaintiff estimates that the time required will be 1.5 hours.

Dated: October 27, 2021

Respectfully Submitted,

By: **HIRALDO P.A.**

<u>*/s/ Manuel S. Hiraldo*</u>
Manuel Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713
*Counsel for Plaintiff*