**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 0:21-CV-61493-RUIZ/STRAUSS

RYAN TURIZO,
individually, and on behalf of all
others similarly situated,

     Plaintiff,

vs.

DOCTOR'S ASSOCIATES LLC,

     Defendant.

                                  /

<u>**DEFENDANT SUBWAY FRANCHISEE ADVERTISING FUND TRUST LTD.'S REPLY**</u>
<u>**IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**</u>

1

**I.      Private Civil Liability Under 47 U.S.C. § 227(c) Cannot be Expanded to *Cellular* Numbers because the Statute Applies Only to Calls Made to a *Residential* Telephone**

Plaintiff cannot pursue damages under 47 U.S.C. § 227(c) based on a 2003 FCC order allowing cell phone numbers to register on the national Do-Not-Call list, where the statute expressly limits private right of actions to *residential telephone subscribers*, not cell phone users. The term "residential telephone subscriber" is not made ambiguous by virtue of it being undefined, as plaintiff argues. Opp. at 3; *see Catalyst Pharms., Inc. v. Becerra*, 14 F.4th 1299, 1307 (11th Cir. 2021) ("'[A] statute is not ambiguous merely because it contains a term without a statutory definition.' . . . 'Congress is "not required to define each and every word in a piece of legislation . . ."'"). Its meaning is made plain by the statute – indeed, plaintiff does not dispute that the TCPA draws a clear distinction between "residential" and "cellular" phone lines, where calls to "home phones and cell phones" are "separately prohibit[ed]" under the TCPA. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1172 (2021); *see also Salcedo v. Hanna*, 936 F.3d 1162, 1170 (11th Cir. 2019) (discussing the TCPA's distinction between calls to cell phones and calls to a "residential telephone line" in concluding that there was "less congressional concern about calls to cell phones").[1] Consequently, as the Eleventh Circuit has ruled, the provisions of the TCPA that govern *residential* phone calls do not apply to calls made to *cellular* numbers. *See Osorio v. State Farm Bank, F.S.B.*, 745 F.3d 1242, 1250 (11th Cir. 2014) (ruling that 47 U.S.C. § 227(b)(1)(B), which prohibits artificial/prerecorded calls to a "residential telephone line," does not extend to calls made to a "cell-phone number").[2] Plaintiff therefore cannot bring a claim under 47 U.S.C. § 227(c)

---

[1] The sole case cited by plaintiff neither explains how the term is ambiguous nor addresses the distinct usage of "residential" versus "cellular" in the statute, and merely assumes that "residential telephone subscriber" is ambiguous because it is undefined. *See Cunningham v. Technologic United States*, No. 19-CV-00231-F, 2020 U.S. Dist. LEXIS 257373 (D. Wyo. June 17, 2020).

[2] Similarly, the TCPA's "prohibition on auto-dialers does not apply to residential land lines."

because the implementing regulations, as specified by the statute, restrict telephone solicitations to "residential telephone subscribers," not cell phone users. 47 U.S.C. § 227(c)(1) and (c)(2).

Plaintiff's opposition ignores the TCPA's differentiation between calls to cellular and residential phones, relying instead on a handful of cases that do not explain how the FCC's 2003 order can circumvent the express limitations of the statute on the basis of policy considerations. Opp. at 2. Unlike the original rule under 47 C.F.R. § 64.1200(c), which tracks the statutory language in restricting telephone solicitations to *residential telephone subscribers*, the FCC's 2003 decision to allow cell phone users to participate in the DNC list was not predicated on 47 U.S.C. § 227(c). The FCC instead invoked the autodialer provision under § 227(b)(1)(iii) to broadly conclude that "the overall intent of the TCPA" was "to allow wireless subscribers to benefit from the full range of the TCPA protections." 2003 FCC Order ¶ 36. But, as ruled in *Duguid*, a broad reading of legislative intent cannot justify an expansion of liability under the TCPA that is contrary to the plain terms of the statute. 141 S. Ct. at 1172 (rejecting a broad autodialer definition based on congressional concerns about intrusive telemarketing practice where the statutory text expressed a "narrow statutory design"). The FCC's 2003 order cannot give rise to civil liability for calls to cell phone numbers on the DNC list because the legal remedy under 47 U.S.C. § 227(c)(5) is limited to a "violation of the regulations prescribed under this subsection," which specifies in § 227(c)(1) that such rules are to "protect residential telephone subscribers' privacy rights," and does not include cell phone users. The regulation plaintiff invokes under the 2003 FCC order, codified at 47 C.F.R. § 64.1200(e), cannot be deemed as a rule prescribed by § 227(c) because the FCC's authority to promulgate regulations cannot exceed the power granted under that subsection. *See*

---

*Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1304 (11th Cir. 2020).

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213-14 (1976) ("The rulemaking power granted to an administrative agency charged with the administration of a federal statute is not the power to make law. Rather, it is 'the power to adopt regulations to carry into effect the will of Congress *as expressed by the statute*.'" (emphasis added)). Allowing plaintiff to maintain a claim under § 227(c) for calls made to a cell phone user would therefore deviate from the clear text of the statute.[3]

The FCC's interpretation of congressional intent is also not supported by the legislative history. In *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), the Eleventh Circuit explained that the TCPA's legislative findings express concerns about unsolicited calls to *residential* lines, i.e., calls "to the *home*." *Id.* at 1169. "By contrast, cell phones are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion." *Id.* Thus, the Eleventh Circuit found it "not surprising that" Congress promulgated "different rules" for different types of calls, and concluded that the "privacy and nuisance concerns about residential telemarketing are less clearly applicable to text messaging." *Id.* While the Eleventh Circuit also concluded that "Congress in 1991 could not have foreseen the explosion in personal cell phone use, the popularity of text messaging, and the near-extinction of the residential telephone line," *id.* at 1170, the Court found that the agency's attempt to update the TCPA through regulatory action was contrary to the plain terms of the statute. *See Glasser*, 948 F.3d at 1308-9 (finding that the FCC's 2003 order interpreted the autodialer provision to adapt to new technology that the statute did not account for, and the FCC "tried to use a broad 'reading of the legislative history' and an

---

[3] Plaintiff's cases do not address whether the 2003 FCC order can expand liability beyond the scope of § 227(c). Opp. at 3-4. Nor was this issue raised in *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (not cited by plaintiff), which noted the FCC "promulgated regulations creating a national do-not-call list" but did not discuss 47 C.F.R. § 64.1200(e) or the 2003 order.

all-encompassing view of the law's purpose to expand the statute's coverage" in a manner inconsistent with the statute). Indeed, the 2003 FCC order reflects a shift in policy that resulted in an unauthorized expansion of liability under the TCPA that was notably rejected in the context of the autodialer provision. *See Duguid*, 141 S. Ct. at 1171 (reversing the Ninth Circuit's broad autodialer definition that aligned with the FCC's interpretation and adopting a narrower construction based on the "clear commands" of the statutory text).

The Court is not bound by the policy directives of the 2003 FCC order, which is not entitled to deference because the statute unambiguously provides that only calls to residential phone subscribers are actionable. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1320 (11th Cir. 2011) (rejecting *Chevron* deference where the statutory language was clear and unambiguous). While plaintiff argues that this Court lacks authority to determine the validity of the 2003 FCC order raised on a defensive challenge, Opp. at 4, the cited Eighth and Ninth Circuit cases referencing the Hobbs Act, 28 U.S.C. § 2342, do not address the regulation at issue, and predate the Supreme Court's decision in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2055 (2019), which held that interpretive rules by the FCC may not be binding on a district court. *See also Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1102-3 (11th Cir. 2019) (indicating that *PDR Network* has put into question the court's prior ruling that district courts lacked jurisdiction to consider challenges to FCC orders; citing concurring opinions by Thomas, J. and Kavanaugh, J., 139 S. Ct. at 2056, 2062); *id.* at 1106 (Pryor, J., concurring) (urging the Eleventh Court to follow the concurring opinion in *PDR Network*); *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 477 n.4 (2d Cir. 2021) ("it is an open question whether we must defer to the FCC's orders interpreting the TCPA," citing *PDR Network*). Here, there is no dispute

that the 2003 order stating that cell phone users *should* be allowed to register on the DNC list is an interpretive rule; it therefore lacks the force of law. *PDR Network*, 139 S. Ct. at 2055; Opp. at 4 (arguing that the Court should "defer to the FCC's interpretation of the statute"). Nor should Subway be barred from challenging the FCC rule on the basis of the Hobbs Act where it did not "have a 'prior' and 'adequate' opportunity to seek judicial review of" the 2003 order. *PDR Network*, 139 S. Ct. at 2055-56. In any event, the Court need not invalidate the 2003 FCC order to conclude that a violation does not give rise to a private cause of action under 47 U.S.C. § 227(c).

II.   **The Communications Act and the TCPA Preempt the FTSA's Application to Interstate Communications**

Plaintiff's FTSA claim alleging a violation of the Autodialer Provision by alleged phone solicitations originating from Connecticut is impliedly preempted by the Communications Act, which occupies the field of *interstate* telecommunications, and is not saved by the TCPA, which shields only certain *intrastate regulations* from preemption. *See* Mot. at 12; *Benanti v. United States*, 355 U.S. 96, 104 (1957) (holding the Communications Act, a "comprehensive scheme for the regulation of interstate communication," occupied the field of interstate telecommunications, preempting state wiretapping statute); *Harrison Higgins, Inc. v. AT&T Commc'ns*, 697 F. Supp. 220, 222 (E.D. Va. 1988) (same). "In general, the Communications Act of 1934 grants to the [FCC] . . . authority to regulate interstate telephone communications and reserves to the States authority to regulate intrastate telephone communications." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 n.1 (2012) (citing *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S 355, 360, 369-70 (1986)). In enacting the TCPA, "Congress believed that federal law was needed because 'telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Id.* at 372.[4] Thus, federal

---

[4] *See also Van Bergen v. Minnesota*, 59 F.3d 1541, 1548 (8th Cir. 1995) ("the TCPA was intended

regulation of interstate telemarketing calls by the TCPA was intended to occupy an area that could not be regulated by state law (*see also* dormant Commerce Clause discussion), and to provide uniform regulation of inter- and intrastate telemarketing calls while allowing states to impose "more restrictive" *intrastate* regulations. *See* 47 U.S.C. § 227(f); 137 Cong. Rec. H10339, 10342 (Nov. 18, 1991) ("To ensure a *uniform approach* . . . H.R. 1304 would *preempt inconsistent State law*. From the industry's perspective, preemption has the important benefit of ensuring that telemarketers are *not subject to two layers* of regulation" (emphasis added)).

The presumption against preemption does not apply because states have not historically regulated *interstate* communications, which is an area occupied by "significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000) ("assumption of nonpreemption is not triggered when the State regulates in an area where there has been a history of significant federal presence"); S. Rep. 102-178, 1991 WL 211220, at *3 (October 8, 1991) (" . . . **States do not have jurisdiction over interstate calls**. Many States have expressed a desire for Federal legislation to **regulate interstate telemarketing calls** to **supplement their restrictions on intrastate calls**.") (emphasis added). Plaintiff argues in favor of the presumption based on state interest in consumer protection, but fails to address the distinction between state regulation of *intrastate* calls (not at issue) and *interstate* calls (the basis for plaintiff's claim). Opp. at 6-7. Plaintiff relies on *MAPCS*, which does not compel a finding of non-preemption because the court assumed, incorrectly, that "the presumption against preemption is not triggered only if there is a significant history of extensive federal regulation *to the exclusion of state regulation*." 159 F. Supp. 3d 173, 215 (D. Mass. 2016)

---

not to supplant state law, but to provide interstitial law preventing evasion of state law by calling across state lines"); *Gottlieb v. Carnival Corp.*, 436 F.3d 335, 342 (2d Cir. 2006) (same).

(italics added). This is a misreading of *Wyeth v. Levine*, 555 U.S. 555 (2009), which clarified in a state common law tort suit that the presumption "accounts for the historic presence of state law but *does not rely on the absence of federal regulation*." *Id.* at 564 n.3 (italics added) (citing *Medtronic, Inc. v. Lohr*, 116 S. Ct. 2240, 2250 (1996)). The presumption applies where "Congress has 'legislated . . . in a field which the States have traditionally occupied,'" *Lohr*, 116 S. Ct. at 2250, but none of the cases cited by plaintiff show that states have historically regulated *interstate* telemarketing calls prior to the TCPA. While *MAPCS* concluded that there was "extensive state regulation" of telemarketing, neither it nor the cases cited distinguish between state regulation of intrastate versus interstate telemarketing calls. 159 F. Supp. 3d at 215. Similarly, in *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013), the court assumed on the basis of state laws prohibiting harassing telephone calls that state jurisdiction over telemarketing calls stemmed from "historic police powers" (citing *Wyeth*), without exploring the interstate/intrastate distinction. Contrary to these assumptions, the TCPA's congressional findings suggest the lack of traditional state regulation of *interstate* telemarketing calls.[5] Given the historic presence of federal law and the historic absence of state law in the field of interstate telecommunications, the presumption against preemption does not apply.

As part of the Communications Act, which Congress understood to have "general preemptive effect," the TCPA was intended to preempt state regulation of interstate calls. *See* 137

---

[5] The Senate Report cited in *Patriotic Veterans*, 736 F.3d at 1045, shows that states historically regulated *intrastate* telemarketing calls, and because states "did not have jurisdiction over interstate calls," federal law was necessary to "supplement" existing "intrastate restrictions." S. Rep. 102-178, 1991 WL 211220, at *3. Plaintiff also cites *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 F.C.C.R. 14014 (2003), for "noting that 'states have historically enforced their own state statutes within, as well as across state lines,'" but the referenced actions post-date the TCPA. 18 F.C.C.R. at 14062.

Cong. Rec. S18781-02, S18784, 1991 WL 252592 (Nov. 27, 1991) ("Pursuant to the general preemptive effect of the Communications Act of 1934, State regulation of interstate communications, including interstate communication initiated for telemarketing purposes, is preempted."). This is evidenced by the TCPA's savings clause, which in stating what is not preempted, expressly saves state regulations of *intrastate* (but not *interstate*) calls. Plaintiff's argument that the savings clause also precludes *field* preemption (or other doctrines of implied preemption) is unsupported by the cases cited and expressly contradicted by the legislative history. *MAPCS* is inapposite because the defendant in that case did not argue that field preemption applies. *See* 159 F. Supp. 3d at 217. *Patriotic Veterans* also does not support plaintiff's argument. The court there construed the savings clause as shielding *intrastate* "regulations" but deemed Indiana's autodialer provision a "prohibition" because it was an "absolute" ban on autodialers. *See* 736 F.3d at 1052. The Autodialer Provision, by contrast, does not absolutely prohibit the use of autodialers but regulates their use on the basis of speech (restricting sales calls), and is therefore a "regulation." *See, e.g.*, *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (treating the TCPA's ATDS provision, which at the time exempted government debt collection calls, as a content-based "regulation" or "restriction" of speech); *Jones v. Wilkinson*, 800 F.2d 989, 1007 (10th Cir. 1986) (distinguishing "complete prohibition" from "regulation"); *Ramirez-De Leon v. Mujica-Cotto*, 345 F. Supp. 2d 174, 189 (D.P.R. 2004) (restriction on right to practice law did not constitute a "complete prohibition").

Accordingly, the Autodialer Provision is a state regulation of interstate telemarketing which is not shielded from preemption by the TCPA's savings clause. Application of the Autodialer Provision is impliedly preempted because the Communications Act occupies the field

of interstate telecommunications, and because the TCPA imposes a uniform and comprehensive scheme of regulations on interstate telecommunications, and plaintiff's claim, which seeks to impose a broader autodialer definition than the TCPA (as construed by *Duguid*), is inconsistent with that scheme because it would impose "two layers of regulation" on interstate calls. *See, e.g.*, *Hines v. Davidowitz*, 312 U.S. 52, 66 (1941).

### III. The FTSA's Autodialer Provision, Alone and in Combination With the Area Code Presumption, Violates the Dormant Commerce Clause

Plaintiff relies on *Ades v. Omni Hotels Mgmt. Corp.*, 46 F. Supp. 3d 999 (C.D. Cal. 2014), Opp. at 10-11, which is inapposite because compliance with California's Invasion of Privacy Act was not unduly burdensome, *id.* at 1015, and the court did not consider if local interests could be promoted with a "lesser impact on interstate activities." *Fla. Transp. Servs.*, 703 F.3d at 1255.

*Ades* also incorrectly limited *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989), to cases involving price-tying or economic discrimination against out-of-state residents, which is contrary to the weight of authority holding that *Healy* is not so limited.[6] Notably, the Supreme Court in *Edgar* found extraterritorial regulations were unduly burdensome *per se* and thus violate the dormant Commerce Clause. *See Edgar*, 457 U.S. at 644. *Edgar* held that an Illinois law "exceed[ed] the inherent limits of the State's power" by preventing a Delaware corporation from acquiring a multi-state entity, because the Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." 457 U.S. at 641-43. In *TelTech*, the court (citing *Healy*) found that Florida's anti-spoofing law had the "practical effect of regulating commerce wholly

---

[6] *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 641-43 (1982); *North Dakota v. Heydinger*, 825 F.3d 912, 920 (8th Cir. 2016) (rejecting identical argument).

outside of Florida, by making it impossible for Plaintiffs to use or offer Caller ID spoofing services anywhere." 2009 WL 10626585, at *8 ("Because of call forwarding and the mobility of cellular telephones, the recipient of that call might be present in Florida, and the New York business would be criminally liable . . . when they called the Ohio telephone number.").

The FTSA likewise has the practical effect of regulating extraterritorial calls based on the statutory presumption that any call to a Florida area code must comply with the Autodialer Provision (even if the person with the Florida area code resides in another state, as is common among cell phone users). The extraterritorial reach of the statute is further exacerbated by the extension of liability to all persons who "knowingly allow" calls to be made using an automated system. Fla. Stat. § 501.059(8)(a). For example, a California platform provider could potentially be sued for supplying an "automated system" to a Connecticut business that sent a promotional text to a person residing in New York with a Florida area code.

Further, if, as plaintiff contends, the Florida legislature intended its autodialer definition to depart from that of the TCPA as construed by *Duguid*, the FTSA subjects interstate calls to inconsistent regulations, effectively forcing callers and businesses to invest in separate, Florida-compliant equipment when calling a Florida area code – contrary to Congress' intent to establish a uniform system of interstate regulations under the TCPA – which is unduly burdensome and outweighs any local interest in regulating the use of an autodialer in a manner inconsistent with the TCPA. *See Norwegian Cruise Line*, 2021 WL 3471585, at *18-19 ("In the absence of any articulated local purpose, the Court need not move any further in the *Pike* analysis."). Plaintiff contends that FTSA's "only purpose . . . is to protect the privacy rights of Florida residents," Opp. at 12, but offers nothing to suggest that this objective would not be achieved by interpreting the

10

FTSA as coextensive with the TCPA's autodialer provision.[7] Indeed, FTC data shows that *over half* of unwanted calls are not "telephonic sales calls" anyway and thus would not be restricted by the Autodialer Provision. *See* Mot. at 19 n.11. If "automated system" is construed as broadly as plaintiff contends, the burdens imposed on interstate calls would far outweigh any marginal protection that the provision provides. Businesses would be forced to use manual phones to avoid any type of "automated system" that can dial phone numbers, or avoid calling persons in Florida altogether which, as *TelTech Systems* makes clear, would be an impossible task, because there is no way to know whether a person is physically present in Florida or not. *See also Pike*, 397 U.S. at 140 (state interest did not justify burden effectively requiring companies to build $200,000 facilities). But if construed coextensively with *Duguid*, the burdens are significantly lessened, changing the balance under *Pike*, while the level of protection would remain the same.[8]

## IV.      The FTSA's Autodialer Provision is Unconstitutionally Vague

What "an automated system for the selection or dialing of telephone numbers" is, is wholly unclear and could result in arbitrary and discriminatory enforcement by courts. Indeed, the Supreme Court in *Duguid* declined to define an autodialer based on "automation" which would require "a difficult line-drawing exercise" by courts to interpret the statute. 141 S. Ct. at 1171 n.6.

Plaintiff's argument that a "less stringent vagueness test applies" because the FTSA

---

[7] Plaintiff's interpretation of the Autodialer Provision is inconsistent with the legislative history which treats it as coextensive with the TCPA. *See* Ex. A (March 25, 2021 Bill Analysis) at 2-3, 6-7, 10, and Ex. B (April 19, 2021 Bill Analysis) at 1-3, 6-8, 10-11 (using "autodialer," "automated system," "automated machine," "automated dialer" and "automated telephone dialing system[]" interchangeably to refer both to the FTSA and TCPA, before and after *Duguid*).

[8] Under *Pike*, courts must also consider the "practical effect . . . if not one, but many or every, State" adopted similarly vague definitions of "automated systems." *See Fla. Transp. Servs. v. Miami-Dade Cnty.*, 703 F.3d 1230, 1245 (11th Cir. 2012); *see also* Mot. at 18 n.10.

regulates commercial speech, Opp. at 20,[9] does not comport with Eleventh Circuit law which applies the same vagueness standard to economic regulations of commercial and noncommercial speech. *See Jacobs v. The Florida Bar*, 50 F.3d 901, 907 (11th Cir. 1995); *cf. Burns v. Town of Palm Beach*, 999 F.3d 1316, 1349 (11th Cir. 2021) (ruling that the "less strict vagueness test" is applied if "First Amendment concerns" are not raised). A "lesser" vagueness test does not apply because the Autodialer Provision is an economic regulation of calls based on content.

Plaintiff's contention that Subway lacks standing to assert a vagueness challenge because its alleged use of a "computer software system" is "clearly" covered by the statute, Opp. at 21, is also unsubstantiated. Plaintiff fails to explain what "an automated system" means, but asserts that it must include computerized systems which would virtually encompass all modern phone systems, including smartphones – a definition that *Duguid* refused to adopt. 141 S. Ct. at 1171 ("classifying almost all modern cell phones as autodialers, would . . . make[] even less sense").[10]

Vagueness is also a question of constitutional *notice* of unlawfulness to a *reasonable person*. As plaintiff explained, "[a] law is impermissibly vague if it does not 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act

---

[9] Plaintiff cites a California district court case to argue that a "civil statute permissibly regulating only commercial speech" is subject to a lower vagueness test. Opp. at 20. This is not a distinction held by the Eleventh Circuit. Moreover, the Supreme Court applied the same vagueness test in cases involving administrative fines and criminal convictions. *See F.C.C. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972).

[10] *Papachristou* undermines plaintiff's argument because the ordinance was held facially void for vagueness despite defendant's stipulation to facts covered by the conduct at issue. 405 U.S. at 158, 164 (finding "prowling by auto" was vague). *Wilson v. PL Phase One Opers. L.P.* is inapposite because it relied on existing "workable definitions" of autodialer developed by prior courts to reject the vagueness challenge. 422 F. Supp. 3d at 983-84 (D. Md. 2019). *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1239 (W.D. Mo. 2019), is also not persuasive because it found "dial[ing] numbers from a stored list" (rejected by *Duguid*) as "clearly covered" by the TCPA.

accordingly,' or does not provide sufficiently explicit standards for those who will apply it, thereby encouraging 'arbitrary and discriminatory enforcement.'" *United States v. Single Family Residence & Real Prop.*, 803 F.2d 625, 630 (11th Cir. 1986). Here, no reasonable person would know what "automated system" is restricted, and would necessarily assume that any present-day phone system would fall under the statute's broad scope, thereby chilling commercial speech.

## V.      The Autodialer Provision Violates the First Amendment

The Autodialer Provision discriminates based on content and viewpoint and is therefore subject to strict scrutiny. *See Barr*, 140 S. Ct. at 2247 (TCPA's preferential treatment of government debt collection calls above other commercial and noncommercial speech, was subject to strict scrutiny). Plaintiff's understanding of *Reed v. Town of Gilbert* and *Sorrell v. INS Health, Inc.* is inconsistent with the Supreme Court's decision in *Barr*, and since *Reed*, numerous courts have applied strict scrutiny to laws discriminating against commercial speech based on content.[11] Here, the FTSA fails under strict scrutiny because it discriminates based on content against calls that do not solicit sales, and discriminates based on viewpoint by giving preferential treatment to political solicitations (not subject to the Autodialer Provision) and debt collection calls (excluded from the FTSA generally). Fla. Stat. §§ 501.059(1)(c), (j), (k), (8)(a). An autodialer may be used to send a bill reminder, but not to sell a "cemetery lot." *See id.*

---

[11] *See, e.g.*, *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 703 (6th Cir. 2020) ("[T]he intermediate-scrutiny standard applicable to commercial speech under *Central Hudson* . . . applies only to a speech regulation that is content neutral on its face."); *Rodgers v. Bryant*, 942 F.3d 451, 456 (8th Cir. 2019) (applying strict scrutiny to loitering law prohibiting "selling something"); *Victory Processing, LLC v. Fox*, 937 F.3d 1218 (9th Cir. 2019) (applying strict scrutiny to Montana autodialer provision). *Dana's R.R.* (and two other Eleventh Circuit cases cited by plaintiff), did not decide whether to apply strict or intermediate scrutiny. *Id.* at 1246. Plaintiff's other cases are inapposite because commercial speech was not at issue or the law was content-neutral.

Even if intermediate scrutiny applied, plaintiff fails to show how the FTSA survives under the *Central Hudson* test, as articulated in *Dana's R.R. Supply v. AG*, 807 F.3d 1235, 1249 (11th Cir. 2015) (citing *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980)); *Jim Gall Auctioneers, Inc. v. City of Coral Gables*, 210 F.3d 1331, 1333 (11th Cir. 2000) ("[E]ven if the . . . activity is treated as commercial speech, it cannot survive the well-known test for the constitutionality of restriction on commercial speech set forth in [*Central Hudson*].").

First, plaintiff does not defend the Autodialer Provision on the grounds that it "regulate[s] speech that is . . . [']misleading [or] related to unlawful activity.'" *Dana's R.R.*, 807 F.3d at 1249.

Second, plaintiff and the Florida legislature identify only a generalized interest in consumer privacy, which was criticized as "formulated too abstractly to provide a meaningful benchmark for weighing the [Autodialer Provision] against the State's purported interest." *Id.* at 1249 (rejecting generalized interest in consumer protection to justify specific content-based regulation of commercial speech, and rejecting more specific attempted articulations as "shifting sand"). Plaintiff asserts that Florida responded to over 200,000 complaints about robocalls by amending the FTSA to "protect Florida consumers from the void" created by *Duguid*'s construction of the TCPA's autodialer definition. Opp. at 18. But the recent amendments—the creation of a private right of action and added heightened consent requirements—have nothing to do with the underlying content discrimination. The reasons for these amendments therefore cannot serve as the interest justifying the restriction on protected expression. *Dana's R.R.*, 807 F.3d at 1249.

Third, neither plaintiff nor the legislature in its Bill Analyses demonstrates *how* the Autodialer Provision materially advances the asserted interest of protecting consumers from unwanted calls. *See* Ex. A at 2; Ex. B at 2. Debt collection calls and fraudulent calls are the most

prevalent unwanted calls, yet the Autodialer Provision "leaves consumers open to an 'unlimited proliferation' of robocalls" on these topics. *See Victory Processing*, 937 F.3d at 1229 (scam calls are "40% of robocalls"); *In the Matter of Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 9074 (2016) (the FTC received more debt collection complaints "than any other industry or practice"); *Norwegian Cruise Lines*, 2021 WL 3471585, at \*15 (exclusion of employers from ban on vaccine mandates weakened contention that it advanced medical privacy).

Finally, the legislature failed to consider or inexplicably rejected obvious, less burdensome alternatives.[12] *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 575 (2011) ("[T]he State offers no explanation why remedies other than content-based rules would be inadequate."); *Wollschlaeger*, 848 F.3d at 1316 (Florida legislature "could have enacted a law which prohibited doctors and medical professionals from making such false and misleading statements" but chose to "broadly restrict[] truthful speech based on content"); *Norwegian Cruise Lines*, 2021 WL 3471585, at \*14 ("By ignoring far less restrictive and precise means, it is likely that an ordinance burdens substantially more speech than necessary."). Plaintiff argues the FTSA "'leaves open alternative channels for communication,'" Opp. at 19, but does not explain how the state lacked less restrictive, content-neutral means (liked the TCPA) to curb robocalls. Nor does the consent exception render the law less restrictive. *See Wollschlaeger*, 848 F.3d at 131 ("[W]here adults are concerned the Supreme Court has never used a . . . captive audience rationale to uphold speaker-focused and content-based restrictions on speech.").

Because the FTSA's autodialer restrictions cannot be severed, the law should be struck down as an unconstitutional restriction on commercial speech.

---

[12] *See* Ex. A at 8 (recognizing First Amendment was a concern without discussing alternatives).

Dated: November 12, 2021

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
*Counsel for Defendant Subway Franchisee Advertising Fund Trust Ltd.*
333 S.E. 2nd Avenue, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile:  (305) 579-0717

**GREENBERG TRAURIG, LLP**
1840 Century Park East
Suite 1900
Telephone: (310) 586-6575
Facsimile: (310) 586-7800
IAN C. BALLON
admitted *pro hac vice*
ballon@gtlaw.com
LORI CHANG
admitted *pro hac vice*
changl@gtlaw.com


By:      /s/ *Mark A. Salky*
        MARK A. SALKY
        Florida Bar No. 058221
        Email: salkym@gtlaw.com

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of November, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ <em>Mark A. Salky</em>
MARK A. SALKY

## SERVICE LIST

<em>Ryan Turizo v. Doctor's Associates, LLC</em>
**CASE NO.: 0:21-cv-61493-CIV-RUIZ/STRAUSS**
**United States District Court, Southern District of Florida**

**Hiraldo P.A.**
Manuel S. Hiraldo, Esq.
401 East Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
Email: mhiraldo@hiraldolaw.com

Jibrael S. Hindi, Esq.
E-mail: jibrael@jibraellaw.com
Thomas J. Patti, Esq.
E-mail: tom@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301

<em>Attorneys for Plaintiff Ryan Turizo</em>