## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KELLIE JO NYANJOM, on behalf of herself and others similarly situated, *Plaintiff*, vs. NPAS SOLUTIONS, LLC, *Defendant*. | Case No. 6:21-cv-1171-JAR-ADM |

### NOTICE OF INTERVENTION AND MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALITY OF 15 U.S.C. § 1692c(b)

Pursuant to Federal Rules of Civil Procedure 5.1(c) and 24(a)(1), and with the authorization of the Solicitor General, the United States of America hereby intervenes in this case for the limited purpose of defending the constitutionality of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692c(b).

On August 23, 2021, Defendant NPAS Solutions, LLC, filed a Notice of Constitutional Question, stating that its Motion to Dismiss, *see* ECF Nos. 5, 6, challenges the application of Section 1692c(b) to its alleged conduct as violative of the Free Speech and Petition Clauses of the First Amendment. *See* Notice, ECF No. 7. Pursuant to federal law, the United States may intervene in this case to oppose Defendants' constitutional challenges. *See* 28 U.S.C. § 2403(a) (authorizing intervention "[i]n any action . . . wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question"); Fed. R. Civ. P. 5.1(c) (permitting the Attorney General to intervene in an action where the constitutionality of a federal statute is challenged); Fed. R. Civ. P. 24(a)(1) (permitting a non-party to intervene when the non-party is given an unconditional right to intervene by a federal statute). On the United States's motion, this Court previously extended to December 3 the deadline for the Government to determine whether to intervene.

The Solicitor General has authorized the Government's intervention in this case.  *See* 28 C.F.R. § 0.21 ("The Solicitor General may in consultation with each agency or official concerned, authorize intervention by the Government in cases involving the constitutionality of acts of Congress.").  Accordingly, the United States files the following Memorandum in Support of the Constitutionality of 15 U.S.C. § 1692c(b).

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................iii

TABLE OF AUTHORITIES ........................................................ iv

INTRODUCTION ........................................................................1

BACKGROUND .........................................................................3

ARGUMENT...............................................................................6

I.      The Court Should Resolve All Non-Constitutional Issues Before
        Addressing the Constitutionality of Section 1692c(b). ...................................6

II.     The Court Should Reject Defendant's Constitutional Challenges..................7

        A.   Section 1692c(b), as Applied to Defendant's Alleged Conduct,
             Does Not Violate the Free Speech Clause. ...................................................7

        1.Defendant's speech is commercial speech. ...................................................7

        2.Intermediate scrutiny is the appropriate standard of review. ...................9

        3.Section 1692c(b) passes intermediate scrutiny. .........................................13

        4.Section 1692c(b) also would pass strict scrutiny......................................18

        B.   The Court Should Reject Defendant's Petition Clause Challenge............20

        1. This case presents no occasion to decide how Section 1692c(b) might
           apply to debt-collection litigation............................................................21

        2. Properly construed, Section 1692c(b) does not conflict with the
           Petition Clause.......................................................................................22

CONCLUSION ......................................................................23

## TABLE OF AUTHORITIES

**CASES**

*303 Creative LLC v. Elenis*,
   6 F.4th 1160 (10th Cir. 2021) ................................................................. 22

*ACA Int'l v. Healey*,
   457 F. Supp. 3d 17 (D. Mass. 2020)..................................................... 8, 10

*Aptive Env't, LLC v. Town of Castle Rock*,
   959 F.3d 961 (10th Cir. 2020) ..................................................... 14, 15, 16

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
   140 S. Ct. 2335 (2020) ............................................................. 11, 13, 14

*Bd. of Trustees of the State Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989) ............................................................................. 17, 18

*Berg v. Merchants Ass'n Collection Div., Inc.*,
   586 F. Supp. 2d 1336 (S.D. Fla. 2008)..................................... 10, 15, 17

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973) ..................................................................................... 22

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) ..................................................................................... 21

*Campuzano-Burgos v. Midland Credit Mgmt., Inc.*,
   550 F.3d 294 (3d Cir. 2008).......................................................................... 2

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
   447 U.S. 557 (1980) ............................................................................ 8, 10, 11

*Chafin v. Chafin*,
   568 U.S. 165 (2013) ..................................................................................... 21

*Conn. Bar Ass'n v. United States*,
   620 F.3d 81 (2d Cir. 2010)............................................................................ 9

*CSMN Invs., LLC v. Cordillera Metro. Dist.*,
   956 F.3d 1276 (10th Cir. 2020) ................................................................. 21

*Edenfield v. Fane*,
   507 U.S. 761 (1993) .............................................................................. 14, 15

*Gburek v. Litton Loan Servicing LP*,
   614 F.3d 380 (7th Cir. 2010) ..................................................................... 12

*Greater New Orleans Broad. Ass'n v. United States*,
   527 U.S. 173 (1999) ..................................................................................... 16

iv

*Greater Philadelphia Chamber of Com. v. City of Philadelphia*,
    949 F.3d 116 (3d Cir. 2020) ........................................................................ 14

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ...................................................................................... 7

*Heintz v. Jenkins*,
    514 U.S. 291 (1995) .................................................................................... 23

*Holmes v. Crown Asset Mgmt., LLC*,
    No. 2:19-CV-00758, 2021 WL 3473050 (D. Utah Aug. 6, 2021) ............................. 21

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    994 F.3d 1341 (11th Cir. 2021) ...................................................... 4, 5, 16

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    No. 19-14434, 2021 WL 4998980 (11th Cir. Oct. 28, 2021) ............... 5, 15, 16, 18

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
    No. 19-14434, 2021 WL 5353154 (11th Cir. Nov. 17, 2021) ................................. 5

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
    559 U.S. 573 (2010) .................................................................................... 3

*Koby v. ARS Nat. Servs., Inc.*,
    No. 09-cv-0780, 2010 WL 1438763 (S.D. Cal. Mar. 29, 2010) ........................ 10, 15

*Lewis v. Continental Bank Corp.*,
    494 U.S. 472 (1990) .................................................................................... 22

*Riley v. Nat'l Fed'n of the Blind of N.C.*,
    487 U.S. 781 (1988) .................................................................................... 9

*Lupia v. Medicredit, Inc.*,
    8 F.4th 1184 (10th Cir. 2021) ...................................................................... 15

*Mark v. J.C. Christensen & Assocs., Inc.*,
    No. 09-cv-100, 2009 WL 2407700 (D. Minn. Aug. 4, 2009) ....................... 10, 15, 18

*Massachusetts v. Oakes*,
    491 U.S. 576 (1989) .................................................................................... 22

*Matal v. Tam*,
    137 S. Ct. 1744 (2017) ............................................................................ 9, 13

*Mo. Broads. Ass'n v. Lacy*,
    846 F.3d 295 (8th Cir. 2017) ...................................................................... 14

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ................................................................................ 12

*Nw. Austin Mun. Util. Dist. No. One v. Holder*,
    557 U.S. 193 (2009) .................................................................................... 7

*Ohralik v. Ohio State Bar Ass'n*,
    436 U.S. 447 (1978) ................................................................................ 8, 10

*Owens-Bennefield v. Nationstar Mortg. LLC*,
    258 F. Supp. 3d 1300 (M.D. Fla. 2017) ......................................................... 12

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ......................................................................... 11, 13, 19

*Reno v. ACLU*,
    521 U.S. 844 (1997) ................................................................................... 19

*Retail Digital Network LLC v. Prieto*,
    861 F.3d 839 (9th Cir. 2017) ....................................................................... 14

*Reyes v. N.A.R. Inc.*,
    No. 1:20-CV-00007, 2021 WL 2660066 (D. Utah June 29, 2021) ......................... 21

*Shapero v. Ky. Bar Ass'n*,
    486 U.S. 466 (1988) ................................................................................... 17

*Shields v. Pro. Bureau of Collections of Md., Inc.*,
    No. 2:20-cv-2205-HLT-GEB, 2021 WL 4806383 (D. Kan. Oct. 14, 2021)................. 7

*Spector Motor Serv. v. McLaughlin*,
    323 U.S. 101 (1944) .................................................................................... 7

*Stover v. Fingerhut Direct Mktg., Inc.*,
    709 F. Supp. 2d 473 (S.D.W. Va. 2009) ......................................................... 10

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................................... 18

*United States v. Edge Broad. Co.*,
    509 U.S. 418 (1993) ................................................................................... 10

*United States v. Stevens*,
    559 U.S. 460 (2010) ................................................................................... 22

*Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ................................................................................... 13

*Vugo, Inc. v. City of New York*,
    931 F.3d 42 (2d Cir. 2019) .......................................................................... 14

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) ................................................................................... 22

*Williams-Yulee v. Fla. Bar*,
    575 U.S. 433 (2015) .............................................................................. 19, 20

*Wisconsin v. Mitchell*,
    508 U.S. 476 (1993) ................................................................................... 12

**STATUTES**

15 U.S.C. § 1692(a) .......................................................................... 15

15 U.S.C. § 1692a(5) .......................................................................... 3

15 U.S.C. § 1692c(b) ................................................................. *passim*

15 U.S.C. § 1692i(a) .......................................................................... 23

15 U.S.C. § 1692k .............................................................................. 4

**OTHER AUTHORITIES**

Niket Nishant, *Morgan Stanley Faces Data Breach, Corporate Client Info
    Stolen in Vendor Hack*, REUTERS (July 8, 2021), https://perma.cc/D8XV-66C2 .... 18

Restatement (Second) of Torts § 652D (1977) .......................................... 16

U.S. Const. amend. I ........................................................................... 21

## INTRODUCTION

In this case, Defendant NPAS Solutions, LLC has raised constitutional challenges under the First Amendment to restrictions imposed by the Fair Debt Collection Practices Act on debt collectors' communications. As relevant here, save for certain exceptions, and in the absence of a debtor's prior consent, the FDCPA prohibits debt collectors from communicating with a person other than the debtor when collecting on a debt. *See* 15 U.S.C. § 1692c(b). Plaintiff Kellie Jo Nyanjom claims that Defendant violated this provision of the FDCPA by sending information regarding her medical debt to a commercial mail vendor so that the vendor could print and mail a "dunning" letter to her on Defendant's behalf.[1] Among other defenses, Defendant has raised two constitutional questions in response: (1) whether Section 1692c(b), when applied to restrict a debt collector's communications with a commercial mail vendor for purposes of preparing and sending a dunning letter, violates the Free Speech Clause of the First Amendment; and (2) whether a strict construction of Section 1692c(b) would violate the Petition Clause of the First Amendment by prohibiting debt collectors from bringing a lawsuit to collect on a debt. Defendant contends that the answer to both questions is "yes," rendering the statute unconstitutional as applied to Defendant's alleged communication with its vendor. But that novel conclusion is not compelled in this case.

*First*, as a threshold matter, the Court should not address Defendant's constitutional arguments until all other non-constitutional issues have been exhausted. Defendant has moved to dismiss the complaint on a variety of non-

---

[1] A "dunning" letter is one which demands payment of a debt from a delinquent debtor. *See Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 300 (3d Cir. 2008) (citing Black's Law Dictionary 502 (6th ed. 1990)).

constitutional grounds.  The Court should resolve all those possible grounds first in order to avoid potentially unnecessary constitutional rulings.

*Second*, even if the Court were to consider them, Defendant's free-speech arguments are unavailing.  Though the bulk of Defendant's briefing is dedicated to invoking strict scrutiny, Section 1692c(b) regulates commercial speech and so, under controlling Supreme Court precedent, is subject only to intermediate scrutiny.  Given Congress's substantial interest in safeguarding debtors' privacy during the debt collection process, the direct manner in which the statute advances that interest, and the reasonable relationship between Congress's interest and the speech restrictions imposed, Section 1692c(b) easily satisfies that more generous standard of review. Even if strict scrutiny somehow did apply, Section 1692c(b) would satisfy that standard of review because the statute is narrowly tailored to advancing a compelling interest in protecting debtors' privacy.

*Third*, this case presents no occasion to rule on the merits of Defendant's Petition Clause challenge.  That challenge rests on hypothetical applications of Section 1692c(b) that are not implicated by Plaintiff's claims.  Moreover, the circumstances of this case do not call for the strong medicine of the First Amendment's overbreadth doctrine, as there are a substantial number of legitimate applications of Section 1692c(b) as compared to the entirely hypothetical concerns that Defendant raises.  And in any event, a proper interpretation of Section 1692c(b) avoids Defendant's concerns altogether.

In brief, no matter how the Court rules on the underlying merits of Plaintiff's claims, it should not find Section 1692c(b) unconstitutional as applied to Defendant in this case.

## BACKGROUND

"Congress enacted the FDCPA in 1977 to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citation omitted).  The FDCPA applies only to the collection of consumer debts.  *See* 15 U.S.C. § 1692a(5) (defining "debt" as "any obligation . . . to pay money arising out of a transaction in which the money . . . which [is] the subject of the transaction [is] primarily for personal, family, or household purposes").  Private persons may sue for violations of the FDCPA and obtain relief in the amount of any actual damages, plus statutory damages of up to $1,000 in an individual action or up to $500,000 or one percent of the debt collector's net worth in a class action.  *See* 15 U.S.C. § 1692k.

As relevant to this proceeding, the FDCPA limits debt collectors' ability to communicate with third parties when collecting on a consumer debt:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).  The cross-referenced provision, Section 1692b, governs the manner in which a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information" and imposes a number of restrictions on such communications.

In *Hunstein v. Preferred Collection & Management Services, Inc.*, a panel of the Eleventh Circuit considered whether a debt collector violates Section 1692c(b) when, absent an applicable exception, it transmits debt-related information to a commercial mail vendor so that the vendor may prepare and send a dunning letter to a debtor. 994 F.3d 1341, 1344 (11th Cir. 2021) ("*Hunstein I*"). Applying what it described as "the plain meaning of the phrase 'in connection with,'" the *Hunstein* court found it "inescapable" that the alleged communication in that case—which revealed the debtor's status as a debtor, the exact balance of the debt, the name of the entity to which he owed the debt, the nature of the debt (which was incurred to pay for a child's medical treatments), and the name of the debtor's child, *id.* at 1345—"at least concerned, was with reference to, and bore a relationship or association to its collection of [the] debt." *Id.* at 1349 (internal quotation marks omitted). In those circumstances, the panel found that a debtor could state a claim for a violation of Section 1692c(b). *See id.* The panel subsequently granted rehearing and reaffirmed this interpretation of Section 1692c(b). *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, --- F.4th ----, No. 19-14434, 2021 WL 4998980, at *1 (11th Cir. Oct. 28, 2021) ("*Hunstein II*"). On November 21, 2021, the full Eleventh Circuit sua sponte voted to vacate the panel's opinion and rehear the case en banc. *See Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, --- F.4th ----, No. 19-14434, 2021 WL 5353154 (11th Cir. Nov. 17, 2021).

Plaintiff in this case has brought a putative class action for damages, asserting substantially the same claim under Section 1692c(b) that the Eleventh Circuit recognized in its now-vacated opinions in *Hunstein I* and *Hunstein II*. *See* Complaint, ECF No. 1 (Compl.). Plaintiff's claim arises out of Defendant's efforts to collect on a personal medical debt. *See id.* ¶¶ 15, 18–23. As alleged in the complaint, Defendant disclosed, without Plaintiff's prior consent, various details about Plaintiff's medical

- 4 -

debt to a third-party mail vendor, RevSpring, Inc., so that RevSpring could print and mail a communication to Plaintiff on Defendant's behalf. *See id.* ¶¶33–47. The details that Defendant disclosed to RevSpring include Plaintiff's name, Plaintiff's address, the account balance of the debt, the name of the creditor of the debt, the client account number associated with the debt, and the date on which Plaintiff sought the medical services underlying the debt. *See id.* ¶¶ 48–53. Citing *Hunstein I*, Plaintiff claims that Defendant's communication with RevSpring violates Section 1692c(b). *See id.* ¶ 72. And because Defendant "often send[s] information regarding consumers' alleged debts to third-party print and mail vendors," *id* ¶ 7, Plaintiff seeks to represent a class of all persons with a Kansas address to which Defendant sent debt collection letters that were prepared, printed, or mailed by a third-party mail vendor within one year of the filing of the complaint, *see id.* ¶ 54.

Defendant has moved to dismiss the complaint on both constitutional and non-constitutional grounds. *See* Defendant's Motion to Dismiss, ECF No. 5; Defendant's Memorandum In Support of Its Motion To Dismiss, ECF No. 6 ("Def.'s MTD"); Defendant's Reply In Support of Its Motion To Dismiss, ECF No. 17 ("Def.'s Reply"). With respect to its constitutional defenses, Defendant's primary contention is that if Section 1692c(b) prohibits debt collectors from transmitting debtor information to letter vendors like RevSpring, then it violates the Free Speech Clause of the First Amendment. *See* Def.'s MTD at 22–25; Def.'s Reply at 17–22. Defendant also raises a constitutional challenge to Section 1692c(b) under the Petition Clause, arguing that a strict construction of the statute would unconstitutionally eliminate debt collectors' right to sue on a debt. *See* Def.'s MTD at 25–26; Def.'s Reply at 12 n.7, 24.

Alongside its motion to dismiss, Defendant filed a Notice of Constitutional Question pursuant to Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403. *See* Notice, ECF No. 7. Plaintiff filed a brief in opposition on September 13, 2021. *See*

- 5 -

Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, ECF No. 14 ("Pl.'s Opp."). On October 4, the United States acknowledged the constitutional questions. *See* ECF No. 19. On the United States's motion, this Court extended the intervention deadline to December 3. *See* ECF Nos. 20, 29. The United States now intervenes to defend the constitutionality of Section 1692c(b) as applied to Defendant's provision of debtor information to a commercial mail vendor in order to print and send a dunning letter to Plaintiff.

## ARGUMENT

### I. The Court Should Resolve All Non-Constitutional Issues Before Addressing the Constitutionality of Section 1692c(b).

As an initial matter, this Court should not address Defendant's constitutional challenge until it resolves all other potentially dispositive jurisdictional and statutory issues. "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). "If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that [courts] ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); s*ee also Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 204–06 (2009).

Defendant raises a slate of arguments for dismissal beyond its constitutional challenges. *See e.g.*, Def.'s MTD at 4–7, 8–14, 27–28; Def.'s Reply at 2–8, 10–12, 13–15. As a matter of constitutional avoidance, the Court should first address those arguments before reaching Defendant's First Amendment challenges.[2] The United

---

[2] In a recent decision by the Honorable Holly L. Teeter, this court disposed of claims much like Plaintiff's on jurisdictional grounds. *See Shields v. Pro. Bureau of Collections of Md., Inc*., No. 2:20-cv-2205-HLT-GEB, 2021 WL 4806383, at *3 (D. Kan. Oct. 14, 2021).

States has intervened solely for the purpose of defending the constitutionality of Section 1692c(b) and, at this time, takes no position on the merits of the non-constitutional issues. It is apparent, however, that the Court's resolution of those issues might obviate the need to consider the Section 1692c(b)'s constitutionality. Therefore, this Court should adhere to the doctrine of constitutional avoidance and decline to rule on the constitutionality of Section 1692c(b) unless the motion to dismiss cannot be resolved on other grounds.

## II. The Court Should Reject Defendant's Constitutional Challenges.

If the Court nonetheless determines that it must reach the constitutional issues raised by Defendant, the Court should uphold Section 1692c(b) as consistent with the First Amendment, even as applied to Defendant's alleged conduct.

### A. Section 1692c(b), as Applied to Defendant's Alleged Conduct, Does Not Violate the Free Speech Clause.

Defendant's primary contention is that Section 1692c(b) violates the Free Speech Clause of the First Amendment. *See* Def.'s MTD at 22–25; Def.'s MTD Reply at 17–22. In particular, Defendant argues that Section 1692c(b), as applied to Defendant's alleged communications with a commercial mail vendor, is a content-based restriction on speech that cannot survive strict scrutiny. *See* Def.'s MTD at 22–24; Def.'s MTD Reply at 17–19. Alternatively, Defendant contends that, even if Section 1692c(b) were subject to intermediate scrutiny, the statute also would fail that standard of review. *See* Def.'s MTD at 25; Def.'s Reply at 19–22. Both arguments are meritless.

1.  <u>Defendant's speech is commercial speech.</u>

For First Amendment purposes, the Supreme Court has long distinguished between "noncommercial expression" and "[e]xpression concerning purely commercial transactions"—*i.e.*, "commercial speech." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S.

447, 455–56 (1978). The category of commercial speech includes expression "related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980). Because their "aim is to persuade, or in the worst case, intimidate, a debtor into making payment," *ACA Int'l v. Healey*, 457 F. Supp. 3d 17, 26 (D. Mass. 2020), communications made in the course of debt collection generally constitute commercial speech.

Defendant does not (because it cannot) dispute that, under the Supreme Court's precedents, its alleged communication with RevSpring qualifies as commercial speech. As Defendant acknowledges, its communication with RevSpring was part of a commercial transaction to obtain mail-vending services, and it transmitted information about Plaintiff to RevSpring so that the vendor could act to further Defendant's economic interest in collecting Plaintiff's debt. *See* Def.'s MTD at 11 (contending that "transmission from a principal (a debt collector) to its agent (its vendor)" is a transmission "to a party to the debt collector's business" (alternations and internal quotation marks omitted)). Nothing about Defendant's alleged communication with RevSpring involved matters of public concern or expressed a point of view, and so it does not fall within the heartland of First Amendment protection for speech with an expressive component. *See Matal v. Tam*, 137 S. Ct. 1744, 1764 (2017) (acknowledging arguments that commercial speech with "an expressive component" might warrant greater constitutional protection); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (noting that "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct"). Rather, Defendant's speech served one purpose: to facilitate Defendant's proposal of a resolution for Plaintiff's outstanding debt. *Cf. Conn. Bar Ass'n v. United States*, 620 F.3d 81, 95 (2d Cir. 2010) (finding that compelled disclosures of basic information about bankruptcy are commercial speech

- 8 -

in part because they "may be understood as facilitating the debtor's proposal of any number of new commercial transactions to his creditors"). Considering the "nature of the speech taken as a whole," *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 796 (1988), the communication at issue in this case is clearly commercial speech.

     2.    <u>Intermediate scrutiny is the appropriate standard of review.</u>

Unlike most noncommercial expression, commercial speech "occurs in an area traditionally subject to government regulation." *United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993) (internal quotation marks omitted). And the government "does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik*, 436 U.S. at 456. Thus, while commercial speech receives some First Amendment protection, it is entitled to only "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values." *Id.* To enforce this limited degree of protection, courts subject most restrictions on commercial speech to intermediate scrutiny under the Supreme Court's decision in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York. See* 447 U.S. at 566.[3]

The weight of authority makes clear that intermediate scrutiny is the appropriate standard of review for evaluating restrictions on commercial speech imposed by the FDCPA. *See, e.g., Berg v. Merchants Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1344–45 (S.D. Fla. 2008); *Koby v. ARS Nat. Servs., Inc.*, No. 09-cv-

---

[3] The Supreme Court has drawn a distinction between commercial-speech regulations that outright restrict truthful commercial messages, subjecting them to intermediate scrutiny under *Central Hudson*, and disclosure requirements aimed at preventing deception, which are subject to an even more deferential form of scrutiny. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249–51 (2010) (noting distinction); *Zauderer v. Office of Disciplinary Counsel of the Supreme Court,* 471 U.S. 626, 650 (1985) (declining to apply *Central Hudson* standard in light of "material differences between disclosure requirements and outright prohibitions on speech").

0780, 2010 WL 1438763, at *6 (S.D. Cal. Mar. 29, 2010); *Mark v. J.C. Christensen & Assocs., Inc.*, No. 09-cv-100, 2009 WL 2407700, at *6 (D. Minn. Aug. 4, 2009); *ACA Int'l v. Healey*, 457 F. Supp. 3d at 26; *Stover v. Fingerhut Direct Mktg., Inc.*, 709 F. Supp. 2d 473, 479 (S.D. W. Va. 2009). Given that the speech at issue in this case is wholly commercial in nature, the Court should follow this authority and assess the constitutionality of Section 1692c(b) under *Central Hudson*'s intermediate standard of review for regulations that restrict commercial speech.

Defendant, though, urges this Court to apply the highest standard of constitutional review: strict scrutiny. *See* Def.'s MTD at 22–24; Def.'s Reply at 17–19. According to Defendant, Section 1692c(b) is a content-based restriction on debt collectors' speech. *See* Def.'s MTD at 22–24; Def.'s Reply 17–19. And drawing on the Supreme Court's recent decisions in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) ("*AAPC*"), Defendant concludes that such restrictions are per se subject to strict scrutiny, whether or not the regulated speech is commercial in nature. *See* Def.'s MTD at 22–24; Def.'s Reply 17–19. To the contrary, nothing in *Reed* or *AAPC* abrogates *Central Hudson*. Thus, the Court should reject Defendant's argument and, instead, evaluate the constitutionality of Section 1692c(b), as applied to restrict Defendant from communicating with a commercial mail vendor in connection with collecting on a debt, under *Central Hudson*.

As a threshold matter, Section 1692c(b) is not "content-based" in the way that Defendant suggests. According to Defendant, under a strict construction of the statute, "a debt collector lawfully could discuss with its vendors the weather, sports, contracts, or the regulatory environment," but "once the conversation turns to debts, it becomes unlawful." Def.'s MTD at 23. But Section 1692c(b) is violated when a debt collector, in connection with the collection of a debt, communicates with a prohibited

- 10 -

third party.  *See* 15 U.S.C. § 1692c(b) (subject to certain exceptions, "a debt collector may not communicate, *in connection with the collection of any debt*, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" (emphasis added)).  On its face, then, the statute distinguishes lawful and unlawful communications based on two factors:  (1) the economic activity that the speaker is engaged in and (2) the identity of the recipient of a debt collector's communication.  As a textual matter, the *content* of a communication—e.g., whether it "turns to debts," Def.'s MTD at 23, or not—is only relevant *within* that framework.  *Cf. Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010) "[C]ommunication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA."); *see also Owens-Benniefield v. Nationstar Mortg. LLC*, 258 F. Supp. 3d 1300, 1309 (M.D. Fla. 2017) (communication directly referencing debt not covered because it was not debt collection activity).

Of course, the words used in a particular communication may shed light on whether a debt collector was engaged in the regulated economic activity—the collection of a debt.  But just as "[t]he First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent," *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993), consideration of the content of a particular communication would not render Section 1692c(b) constitutionally suspect.  The consideration of the content of a debt collectors' speech as evidence of the type of activity involved does not change the fact that Section 1692c(b)'s restriction is directed at economic activity.  *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2373 (2018) ("[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." (citation omitted, brackets in original)).

Even assuming that Section 1692c(b) is a content-based restriction on speech, Defendant would still be wrong about what follows from that conclusion.  To be sure, the decisions in *Reed* and *AAPC* call for strict scrutiny of laws that "appl[y] to particular speech because of the topic discussed or the idea or message expressed," *Reed*, 576 U.S. at 163, or that, though facially neutral, "cannot be justified without reference to the content of the regulated speech," or "were adopted by the government because of disagreement with the message the speech conveys," *id.* at 164.  *See AAPC*, 140 S. Ct. at 2346–47.  Thus, in *Reed*, the Supreme Court classified as content-based (and invalidated) a municipal sign ordinance that directly discriminated among specifically described categories of speech based on subject-matter.  In particular, the ordinance "identifie[d] various categories of signs based on the type of information they convey[ed], then subject[ed] each category to different restrictions." *Reed*, 576 U.S. at 159; *see also id.* at 159–161.  The restrictions thus "depend[ed] *entirely* on the communicative content of the sign," *id.* at 164 (emphasis added), and "[i]deological messages [we]re given more favorable treatment than messages concerning a political candidate, which [we]re themselves given more favorable treatment than messages announcing an assembly of like-minded individuals," *id.* at 169.  Similarly, in *AAPC*, the Supreme Court invalidated a provision of the Telephone Consumer Protection Act that expressly exempted speech concerning government-debt collection from prohibitions that applied to all other forms of debt-collection speech.  140 S. Ct. at 2347.

Critically, though, those decisions do not repudiate the Supreme Court's longstanding approach to commercial speech, which accords more generous review to commercial regulations precisely because of commercial speech's content.  *See, e.g.*, *Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 772 n.24 (1976) (noting less protection is warranted because commercial speech is both "more

easily verifiable by its disseminator" and, given the profit motive of commercial actors, less likely to be "chilled by proper regulation"); *see also Matal*, 137 S. Ct. at 1767 (Kennedy, J., concurring) (suggesting that content-based discrimination is not "of serious concern in the commercial context"). Neither *Reed* nor *AAPC* involved regulations of commercial speech, and neither decision expresses doubt that *Central Hudson* remains the controlling precedent for commercial speech. Indeed, the plurality opinion in *AAPC* reaffirms the Court's traditional, more-relaxed approach to scrutinizing laws that regulate commercial activity. 140 S. Ct. at 2347 ("Our decision is not intended to expand existing First Amendment doctrine or to otherwise affect traditional or ordinary economic regulation of commercial activity."). The opinion even expressly characterizes the FDCPA as a statute that "regulate[s] debt collection" and likens the FDCPA to the sort of "restrictions directed at commerce or conduct" that may impose "incidental burdens on speech" without running afoul of the First Amendment. *Id.* And, in any event, the Tenth Circuit has continued to apply intermediate scrutiny to content-based restrictions on commercial speech even after the Supreme Court's decision in *Reed*. *See Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 982, 987 (10th Cir. 2020); *accord Vugo, Inc. v. City of New York*, 931 F.3d 42, 49–50 (2d Cir. 2019); *Greater Philadelphia Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 137 (3d Cir. 2020); *Retail Digital Network LLC v. Prieto*, 861 F.3d 839, 846–49 (9th Cir. 2017); *Mo. Broads. Ass'n v. Lacy*, 846 F.3d 295, 300 & n.5 (8th Cir. 2017). Thus, regardless of the nature of Section 1692c(b)'s restrictions on third-party contacts, the commercial speech framework articulated in *Central Hudson* should control the Court's assessment of Defendant's as-applied challenge.

3.    <u>Section 1692c(b) passes intermediate scrutiny.</u>

As discussed above, "[t]he test enunciated in *Central Hudson* is a form of 'intermediate standard of review.'" *Aptive Env't, LLC*, 959 F.3d at 987 (quoting

*Edenfield v. Fane*, 507 U.S. 761, 767 (1993)).  Under *Central Hudson*, restrictions on commercial speech comport with the First Amendment (1) when the government's interests in restricting the speech are "substantial," (2) when the restriction advances those interests "in a direct and material way," and (3) when the restriction "is in reasonable proportion to the interests served."  *Id.* (quoting *Edenfield*, 507 U.S. at 767).  Section 1692c(b) satisfies this standard even as applied to Defendant's alleged communication with a commercial mail vendor.

There is no dispute in this case that the government's interest in restricting debt collectors' speech to third parties in connection with collecting on a debt is substantial.  Recently, the Tenth Circuit has noted that, "[i]n enacting the FDCPA, Congress recognized that abusive debt-collection practices may intrude on another's privacy interests."  *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1192 (10th Cir. 2021) (citing 15 U.S.C. § 1692(a)).  Consistent with this observation, courts considering Section 1692c(b) have noted that the provision's speech restrictions relate to Congress's interest in protecting consumer privacy.  *See Koby*, 2010 WL 1438763, at *6; *Berg*, 586 F. Supp. 2d at 1345; *Mark*, 2009 WL 2407700, at *8.  Indeed, Defendant concedes that this interest is substantial.  *See* Def.'s MTD at 25 ("Solutions agrees that prohibiting 'substantial invasions of privacy' meant to shame or embarrass consumers into paying their debts is a substantial government interest.").

Because the government has a substantial interest in safeguarding debtors' privacy during the debt collection process, the Court will next need to consider whether the restriction "directly advances" that interest.  *See Aptive Env't, LLC*, 959 F.3d at 987.  Here again, there is no dispute from Defendant.  *See* Def.'s MTD at 25. As multiple courts have found, Section 1692c(b) directly advances the government's interest in consumer privacy by prohibiting debt collectors from communicating with unrelated third parties when engaged in debt collection.  *See Berg*, 586 F. Supp. 2d

- 14 -

at 1345; *Mark*, 2009 WL 2407700, at *8.  Indeed, *Hunstein II* itself recognized Section 1692c(b) as being rooted in longstanding restrictions on the unwarranted public dissemination of private facts.  *See* 2021 WL 4998980, at *7 (recognizing that, under longstanding tort principles, "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public" (quoting Restatement (Second) of Torts § 652D (1977))).  The effect of Section 1692c(b)'s restriction— limiting communications from debt collectors to those with direct interests in the subject debt, unless the consumer has effectively waived the right to privacy—helps to stop abusive tactics such as publicizing debts to employers and associates.  This effect cannot reasonably be characterized as "remote" from the government's interest. *Aptive Env't, LLC*, 959 F.3d at 988.

Given that Section 1692c(b) directly advances the government's interest in protecting consumer privacy when the consumer is a target of debt collection, the constitutional inquiry in this case turns on whether the statute's restrictions are drawn in reasonable proportion to the government's interest.  *See id.* at 987. Defendant contends that Section 1692c(b) cannot satisfy intermediate scrutiny because "there exist 'numerous and obvious less-burdensome alternatives' to further that interest."  Def.'s MTD at 25.  Further, as applied to communications between debt collectors and commercial mail vendors, Defendant argues that Section 1692c(b) does not "purchase much in the way of 'real' consumer privacy," because commercial mail vendors are unlikely "to care about the information received or to take adverse action based on it."  Def.'s Reply at 21 (quoting *Hunstein I*, 994 F.3d at 1352).

Defendant's framing gets the intermediate-scrutiny analysis wrong.  When regulating commercial speech, "[t]he Government is not required to employ the least

- 15 -

restrictive means conceivable"—rather, its chosen restriction must have "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188 (1999) (quoting *Bd. of Trustees of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)).  Thus, the Supreme Court invalidates commercial speech restrictions under *Central Hudson* to the extent the restrictions are "substantially excessive, disregarding 'far less restrictive and more precise means.'"  *Bd. of Trustees*, 492 U.S. at 479 (quoting *Shapero v. Ky. Bar Ass'n,* 486 U.S. 466, 476 (1988)).

The fit of Section 1692c(b) is clearly reasonable under *Central Hudson*. Prohibiting debt collectors from communicating with unenumerated third parties in connection with collecting on a debt, save for certain limited purposes and unless the debtor has given prior consent to such communications, limits the potential for harassment and purposeful or inadvertent disclosures of sensitive personal information.  *See Berg*, 586 F. Supp. 2d at 1345.[4]  Meanwhile, the statute leaves substantial room for debt collectors to speak: Section 1692c(b) permits debt collectors to obtain permission for other third-party communications, and debt collectors may communicate with the restricted third parties outside of the context of collecting on a debt.  Of course, debt collectors also remain free to communicate directly with debtors, with creditors if the debt collectors are collecting on behalf of another, with

---

[4] Notably, in interpreting Section 1692c(b) to apply to debt-collector communications with commercial mail vendors, the *Hunstein* court invoked this precise rationale.  *See Hunstein II*, 2021 WL 4998980, at *7 (finding that "disclosure of intensely private information—including, most notably, the status of Hunstein's debt, his minor son's name, and that his debt arose from his son's medical treatment—could clearly offend a reasonable person and is not of legitimate public concern").

the debt collector's attorneys, with the attorneys of the creditor, and with the debtor's attorney.  *See* 15 U.S.C. § 1692c(b).

To be sure, the typical disclosure to a commercial mail vendor may be unlikely to cause significant privacy harms to an individual consumer.  But restricting the dissemination of consumer information to vendors does advance consumers' privacy interest in the aggregate.  Vendors are often the source of data breaches, and use of vendors by debt collectors increases consumers' exposure to the privacy risks associated with data breaches.  *See, e.g.*, Niket Nishant, *Morgan Stanley Faces Data Breach, Corporate Client Info Stolen in Vendor Hack*, Reuters (July 8, 2021), https://perma.cc/D8XV-66C2.

The degree of harm is surely relevant to any claim for actual damages, and, as Defendant contends, it might prevent a debtor from establishing standing to sue under *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).[5]  But that Defendant may face increased costs from economic regulation does not undermine Section 1692c(b)'s proportionality to the issues of consumer privacy that Congress sought to address. *See Mark*, 2009 WL 2407700, at *5 n.4 ("[T]he argument that the FDCPA, as enacted, unfairly burdens the collection industry and targets conduct that, in [the debt collector's] view, causes minimal harm to consumers, is a policy consideration more appropriately directed to the legislative branch of government."); *cf. Hunstein II*, 2021 WL 4998980, at *15 (acknowledging that the court's interpretation of the statute "may well require debt collectors (at least in the short term) to insource many of the services that they had previously outsourced, potentially at great cost"). For constitutional purposes, it suffices that Congress crafted Section 1692c(b)'s prohibition in reasonable proportion to the problem of preserving debtors' privacy,

---

[5] At this time, the United States takes no position on Plaintiff's standing to sue.

while leaving Defendant substantially free to communicate in connection with its collection on a debt with relevant persons. *Accord Bd. of Trustees*, 492 U.S. at 480 (while regulators must distinguish the harmless from the harmful, "the distinguishment [need not be] 100% complete"). The burden of performing in-house a particular commercial function (the preparation and mailing of dunning letters) that Defendant believes would more efficiently be outsourced does not render Section 1692c(b) unconstitutional.

     4.    <u>Section 1692c(b) also would pass strict scrutiny.</u>

Although the free-speech question in this case should be resolved under *Central Hudson*'s intermediate scrutiny standard, the statute would also survive strict scrutiny. Laws subject to strict scrutiny must be "narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226 (2015). A statute fails the least-restrictive-means test only if "less restrictive alternatives would be *at least as effective* in achieving the legitimate purpose that the statute was enacted to serve." *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (emphasis added). The First Amendment does not require laws to be "perfectly tailored." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 454 (2015).

Defendant does not dispute that preventing abusive debt collection efforts that threaten consumer privacy is a "compelling interest." *See* Def.'s MTD at 24. Rather, it contends only that Section 1692c(b) sweeps too broadly to the extent that it restricts communications with mail vendors. In Defendant's view, vendors are "unlikely to care about or abuse the information" provided to them in the course of debt-collection communications, *id.*, and so less restrictive means exist for Congress to achieve its interests in combatting abusive debt collection practices.

But in fact, Congress's chosen scheme "restricts a narrow slice of speech," *Williams-Yulee*, 575 U.S. at 453—speech to third parties in connection with the

- 18 -

collection of a debt.  The statute leaves debt collectors free to communicate with those third parties in other contexts and for other purposes, and it permits debt collectors to communicate with the debtors themselves, the debtors' attorneys, any attorneys for the debt collector, and other individuals with a direct legal relationship to the debt.  *See* 15 U.S.C. § 1692c(b).  The statute also allows debt collectors to seek a debtor's permission to contact a broader set of parties.  *See id*.  Thus, rather than fully abridge debt collectors' ability to communicate with third parties in connection with the collection of a debt, Congress has provided *consumers* with the ability to safeguard their privacy interests, instead of allowing debt collectors to judge those facts for themselves.

Defendant may believe that *its* chosen mail vendor will have little interest in Plaintiff's debt.  But "most problems arise in greater and lesser gradations, and the First Amendment does not confine [the government] to addressing evils in their most acute form."  *Williams-Yulee*, 575 U.S. at 454.  Allowing debt-collector communications to mail vendors in connection with collecting on a debt could open the door to exactly the sort of privacy disclosures that Congress sought to prevent in enacting Section 1692c(b)—permitting, for example, debt collectors to communicate with mail vendors that employ a debtor's friends, neighbors, or acquaintances.  It would also put consumers' data at greater risk of a data breach because the data would be stored in multiple locations, creating more attack vectors.  That less stringent rule would not be as effective in advancing Congress's goals as Section 1692c(b) is in its current form.

Congress determined that unauthorized communications with third parties in connection with collection on a debt risk compromising the privacy interests of debtors.  A law generally prohibiting such communications while a debt collector is collecting on a debt, subject to relevant exceptions and to the prior authorization of

- 19 -

the debtor, is narrowly tailored to address that concern.  Thus, even if it applies strict scrutiny, the Court should reject Defendant's free-speech challenge to Section 1692c(b).

**B. The Court Should Reject Defendant's Petition Clause Challenge.**

Briefly, in a passing attempt to identify additional grounds to invoke principles of constitutional avoidance in this case, Defendant also questions whether Section 1692c(b) violates the Petition Clause.[6]  In effect, Defendant argues that if that provision is construed as strictly as Plaintiff urges and as the Eleventh Circuit did in *Hunstein I* and *Hunstein II*, then Section 1692c(b) unconstitutionally "eliminate[s] a debt collector's ability to sue on debt."  Def.'s MTD at 26.  Defendant reasons that this conclusion necessarily follows because "commencement and prosecution of an action on debt requires communication about the debt to people not enumerated" in the statute, *id.*, including process servers and, as a function of open court proceedings, the general public, *see* Def.'s Reply at 12.  If it reaches the issue, this Court should reject Defendant's Petition Clause challenge.

---

[6] Among its other guarantees, the First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  This provision—the Petition Clause—provides immunity from liability for petitioning activities, including for those who seek redress through the courts.  *See CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1282 (10th Cir. 2020) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)).  One district court in the Tenth Circuit has recently concluded that "a lawsuit to recover a debt is a petition for redress of grievances for purposes of Petition Clause immunity."  *Reyes v. N.A.R. Inc.*, No. 1:20-CV-00007, --- F. Supp. 3d ----, 2021 WL 2660066, at *5 (D. Utah June 29, 2021); *see also Holmes v. Crown Asset Mgmt., LLC*, No. 2:19-CV-00758, --- F. Supp. 3d ----, 2021 WL 3473050 (D. Utah Aug. 6, 2021) ("The court concludes that Defendant's lawsuits were protected by the Petition Clause and thus did not violate the FDCPA.").

1.    <u>This case presents no occasion to decide how Section 1692c(b) might apply to debt-collection litigation.</u>

First, Defendant's Petition Clause challenge is not properly before the Court. "Federal courts may not 'decide questions that cannot affect the rights of litigants in the case before them' or give 'opinion[s] advising what the law would be upon a hypothetical state of facts.' *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990)). Yet in this case, even if Section 1692c(b) could be read to prohibit debt collectors from filing lawsuits to collect on a debt, Defendant's right to file a lawsuit to recover a debt has not been questioned, nor does Defendant argue that the Petition Clause protects a right to communicate with commercial mail vendors in connection with collecting on a debt. Therefore, this Court has no occasion to rule on the constitutionality of the hypothetical applications of Section 1692c(b) that Defendant raises.

To the extent that Defendant's Petition Clause challenge is an underdeveloped overbreadth challenge to Section 1692c(b)'s validity, that too should be rejected. The overbreadth doctrine as applied to First Amendment cases "is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others." *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989). "[A] law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449 n.6 (2008)). Here, as Defendant appears to concede, there are many plainly legitimate applications of Section 1692c(b)'s restrictions on third-party communications. Judging the substantial number of legitimate applications in relation to the hypothetical concerns that Defendant raises,

- 21 -

the Court should conclude that "whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1189 (10th Cir. 2021). Whatever the ultimate merits of Defendant's Petition Clause challenge, it "do[es] not warrant the 'strong medicine' of the overbreadth doctrine." *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

      2.    <u>Properly construed, Section 1692c(b) does not conflict with the Petition Clause.</u>

      In any event, as Plaintiff has previously argued, *see* Pl.'s Opp. at 29 n.17, Section 1692c(b) is susceptible to various limiting constructions that would avoid Defendant's strained interpretation. Indeed, the Supreme Court itself has suggested that a better reading of the FDCPA would incorporate some "additional, implicit, exception" to the limits on debt collectors' communications, allowing for court filings. *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995); *see also id.* (characterizing the notion that Section 1692c might "cause an ordinary debt-collecting lawsuit to grind to a halt" as a "reading[] that courts seem unlikely to endorse"). In particular, the text of Section 1692c(b) clearly allows debt collectors to communicate with an attorney and with the debtors' attorneys, who would disseminate and receive most if not all communications in litigation. And court filings may be characterized as communications made "with the express permission of a court of competent jurisdiction," 15 U.S.C. § 1692c(b), as contacts with process servers, public filings with the court, and similar communications would appear to be authorized by court rules and orders. That interpretation also would be consistent with the text of Section 1692c(b) and other provisions of the FDCPA that clearly contemplate the possibility of judicial proceedings. *See, e.g., id.* (allowing third-party communications "as reasonably necessary to effectuate a postjudgment judicial remedy"); 15 U.S.C. § 1692i(a) (providing venue rules for legal actions on a debt brought by debt collectors);

*see also Heintz*, 514 U.S. at 296 (noting the FDCPA's "apparent objective of preserving creditors' judicial remedies").

## CONCLUSION

For the reasons above, if the Court reaches Defendant's constitutional challenges, it should find that the application of Section 1692c(b) to Defendant's alleged conduct is constitutional.

Dated: December 3, 2021                Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Acting Assistant Attorney General

                                       LESLEY R. FARBY
                                       Assistant Branch Director

                                       */s/ Cody T. Knapp*
                                       CODY T. KNAPP
                                       New York Bar No. 5715438
                                       Trial Attorney
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L St. NW
                                       Washington, D.C. 20005
                                       Telephone: (202) 532-5663
                                       Facsimile: (202) 616-8470
                                       E-mail: cody.t.knapp@usdoj.gov

                                       *Counsel for the United States of America*

## Certificate of Service

I hereby certify that, on December 3, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all parties in this case.

*/s/ Cody T. Knapp*
CODY T. KNAPP
New York Bar No. 5715438
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Telephone: (202) 532-5663
Facsimile: (202) 616-8470
E-mail: cody.t.knapp@usdoj.gov

*Counsel for the United States of America*